**Don C. WILLIAMS, Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

No. 93–1293.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1993.

Decided Jan. 28, 1994.

Eric Vickers, St. Louis, MO, argued (Raymond Howard on the brief), for appellant.

John M. Thomas, Dearborn, MI, argued (John S. Sandberg, St. Louis, MO, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

Don C. Williams appeals from a final judgment entered in the United States District Court [1] for the Eastern District of Missouri in favor of Ford Motor Company (Ford). Following a bench trial, the district court held that (1) Williams failed to establish a prima facie case of race discrimination under Title VII, and (2) assuming arguendo that a prima facie case had been established, Williams failed to show that Ford denied him reinstatement for race-motivated reasons.

---

[1] The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

*Williams v. Ford Motor Co.,* No. 90–2411–C(5) (E.D.Mo. Nov. 25, 1992) (memorandum and order). For reversal, Williams argues the district court erred in reaching both of these conclusions. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

The material facts in this case are undisputed. Williams is an African–American male who was employed by Ford from 1977 to 1989. The terms and conditions of Williams' employment were determined in part by a national collective bargaining agreement between Ford and the United Automobile, Aerospace and Agriculture Implement Workers of American (UAW). The medical leave provisions of the collective bargaining agreement state that once an employee's medical leave of absence expires, that employee is sent a "five day letter" which directs the employee to either report to work or provide medical evidence of the need for an extension within five days of receiving the letter. Employees were permitted to telephone Ford and provide the reasons supporting their need for an extension. The "five day letter" also warns employees that failure to respond within the five-day period will result in immediate termination. Ford also has a policy in place whereby "reinstatement waivers" will be awarded under certain conditions to employees who have been terminated. Employees specifically terminated for violating the "five day letter" rule may apply for such a "reinstatement waiver." An employee who receives a "reinstatement waiver" is permitted to return to work under probation.

In April 1989, Williams told his supervisors that he had been diagnosed with a defective heart valve. Williams requested and was granted a medical leave of absence. On May 18, 1989, Williams received a "five day letter" informing him that his medical leave of absence had expired. Williams reported to the labor relations office at Ford within the five-day period. Williams then received an extension of his medical leave after the Ford plant physician determined that Williams' blood pressure was too high for him to re-turn safely to work. On June 28, 1989, Ford sent Williams a second "five day letter" informing him that the extension of his medical leave of absence had expired. Williams did not return to work or contact Ford within the five-day period. On July 20, 1989, over two weeks after the extension of his medical leave had expired, Williams returned to the Ford plant prepared to resume work. Williams claimed that he had been receiving treatment for hypertension and high blood pressure. Williams was terminated by a labor relations representative for not following the "five day letter" rule. Williams applied for, but did not receive, a reinstatement waiver.

From 1988 to 1990, Ford terminated twenty-one employees (fifteen Caucasian, five African–American and one Hispanic) for violating the "five day letter" rule. Nine of the fifteen Caucasian employees received a reinstatement waiver. No African–American or Hispanic employee received a reinstatement waiver.

Williams filed suit in district court under Title VII of the Civil Rights Act of 1964 alleging that statistical evidence showed that Ford applied its reinstatement waiver policy in a racially discriminatory fashion. The district court entered judgment in favor of Ford following a bench trial. The district court held that Williams failed to establish a prima facie case of race discrimination because he could not demonstrate that Ford replaced or sought to replace him with a non-minority. Op. at 1308–1309. The district court also held that, assuming arguendo, that Williams had established a prima facie case, Ford articulated a legitimate, non-discriminatory reason for its employment decision which was not pretextual. *Id.* at 1309.

On appeal, Williams essentially contends that the district court misapplied applicable law and, under the correct legal standards, the district court's finding of no discrimination is clearly erroneous.

## II. DISCUSSION

■ Williams first argues that the district court erred in concluding that he had failed to establish a prima facie case of race discrimination under Title VII. Williams con-

tends that he need not show that Ford replaced or sought to replace him with a Caucasian in order to establish a prima facie case. We agree.

The district court analyzed this case as a disparate treatment, wrongful discharge case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*). The district court required Williams to prove the following elements to establish a prima facie case: (1) that he was a member of a protected group; (2) that he was qualified for his position and satisfied its normal requirements; (3) that he was discharged; and (4) that after his discharge, Ford replaced or sought to replace him with a person outside the protected class in question. The district court concluded that Williams failed to establish a prima facie case of racial discrimination because he "had failed to establish that Ford sought persons who were not members of the protected group to fill his job after his discharge." Op. at 1308–1309. We hold that the district court erred in imposing such a strict requirement. "No such per se requirement has traditionally been imposed in cases brought under Title VII." *Walker v. St. Anthony's Medical Center*, 881 F.2d 554, 558 (8th Cir.1989) (*Walker*). Rather, Title VII has been interpreted to require only that, in addition to the first three elements of the *McDonnell Douglas* test, a plaintiff show that his or her discharge occurred under circumstances which create an inference of unlawful discrimination. *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469 (8th Cir. 1984) (*Craik*). In the context of a sex discrimination claim brought under Title VII, this court noted that it is entirely plausible that a woman discharged and replaced by another woman will be able to establish that she was the object of impermissible discrimination based on gender. *Walker*, 881 F.2d at 558. In such a case, the gender of the employee who replaced the plaintiff pertains to the weight of the evidence as opposed to its legal sufficiency. *Id.* In sum, "[t]he elements of a prima facie case vary with the circumstances of the alleged discrimination." *Jones v. Frank*, 973 F.2d 673, 676 (8th Cir. 1992) (*Jones*). *See also McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

The district court erred in requiring Williams to show that Ford replaced or sought to replace him with a non-minority in order to establish a prima facie case.

■ In the present case, Williams claimed that Ford's refusal to reinstate him after discharge was based upon reasons related to his race. We note that the *McDonnell Douglas* wrongful discharge test has been applied to reinstatement cases. *See Johnson v. Arkansas State Police*, 10 F.3d 547, 550 (8th Cir.1993) (*Johnson*) (the elements of the prima facie case under *McDonnell Douglas* are that plaintiff is (1) a member of a protected class; (2) qualified for the position; and (3) fired from the position). However, in light of the fact that Williams' claim of discriminatory refusal to reinstate was based solely upon the fact that Ford reinstated nine allegedly comparable Caucasian employees but no minority employees, we analyze Williams' prima facie case according to the elements set forth in *Jones*. In *Jones*, the plaintiff likewise alleged discriminatory refusal to reinstate based upon a theory of disparate treatment. Under *Jones*, to establish his prima facie case of race discrimination, it was sufficient that Williams showed (1) he was a member of a protected class, (2) he was qualified for but denied reinstatement, and (3) similarly situated employees outside his protected class were reinstated to their positions. 973 F.2d at 676.

■ The prima facie case requires only that Williams establish facts adequate to permit an inference of discrimination. *Craik*, 731 F.2d at 469. "[T]he burden of establishing a prima facie case of disparate treatment is not onerous...." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (*Burdine*). The district court must not conflate the prima facie case with the ultimate issue of discrimination. *Johnson*, 10 F.3d at 551. Under the *Jones* model, this court holds that Williams established a prima facie case of race discrimination. Williams satisfies the first two elements because he is an African–American who qualified for but was denied reinstatement. Williams also satisfies the third element, that other similarly

situated employees outside his protected group were treated differently. In determining whether employees are "similarly situated" for purposes of establishing a prima facie case we consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *See Boner v. Board of Comm'rs*, 674 F.2d 693, 697 (8th Cir.1982). Williams was "similarly situated" to the nine Caucasian employees because all were discharged for violating the "five day letter" rule, yet Williams was treated differently because he was refused reinstatement.[2]

■ Once the prima facie case is established, Ford as the employer bears the burden of articulating a legitimate, non-discriminatory reason for its adverse employment action. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The district court found that Ford articulated a legitimate, non-discriminatory reason for its adverse employment decision. Ford asserted that its decision to refuse Williams reinstatement resulted from his failure to follow the "five day letter" rule. A violation of a company rule can constitute a legitimate, non-discriminatory reason for the decision to refuse an employee reinstatement, and thus, Ford rebutted Williams' prima facie case and satisfied the second step of the *Burdine* framework.

■ Once the employer articulates a legitimate non-discriminatory reason for its adverse employment action, the plaintiff has the "opportunity to demonstrate that the proffered reason was not the true reason for the employment decision," or, in other words, to prove pretext. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The district court found that Ford's proffered reason for denying Williams reinstatement was not pretextual.

■ Williams attempted to show pretext with evidence that nine of the fifteen Caucasian employees discharged for violating the "five day letter" rule received reinstatement waivers, whereas none of the African–American employees discharged for violating the "five day letter" rule received reinstatement waivers. These numerical comparisons fail to prove that race was the determining factor in Ford's decision to deny Williams reinstatement. For the statistical comparison to be probative in persuading the trier of fact on the ultimate issue of discrimination, Williams must establish that the Caucasian employees who were reinstated were "similarly situated in all relevant respects" to the African–American employees.[3] *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985), *quoting Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. Yet, the record is devoid of any evidence that any of the Caucasian employees granted reinstatement waivers were "similarly situated" to Williams or any of the other African–American employees who did not receive reinstatement waivers. For example, Williams presented no evidence regarding the prior work histories of the rein-

---

**2.** In *Jones*, this court found that the plaintiff failed to establish a prima facie case of gender-based discrimination in the decision not to reinstate her because she failed to show three male employees reinstated after termination were indeed "similarly situated" to the plaintiff. *Jones* is clearly distinguishable from the present case. In *Jones*, the plaintiff was discharged for falsifying her employment application and applied for but was refused reinstatement. The three "comparable" male employees, also discharged for falsifying their employment applications, all worked at, were discharged from, and were reinstated by the Little Rock Postal Service facility. The reinstatement orders were all signed by the supervisor of the Little Rock facility. In sharp contrast, the plaintiff worked at and was discharged from the Pine Bluff Postal Service facility. The Pine Bluff Postmaster made the decision not to reinstate the plaintiff. The Pine Bluff Postmaster was not involved in the decisions to reinstate the male employees at the Little Rock facility. The record showed that the decision whether to reinstate former employees was within the sole discretion of the Postmaster or supervisor of each facility. The plaintiff made no showing that the Pine Bluff Postmaster ever reinstated any employee, male or female, who was discharged for falsifying an employment application. Under these circumstances, the plaintiff and the three male comparable employees on which she relied were not similarly situated and, thus, the plaintiff's evidence was not sufficient to give rise to an inference of discrimination.

In sharp contrast, in the present case, Williams and the nine Caucasian employees to whom he compares himself all worked at and were discharged from the same facility. Moreover, one individual, Rainey Crawford, Ford's production manager, made all reinstatement decisions.

**3.** We note that the phrase "similarly situated" also appears in the discussion of the prima facie case. As evident from the respective discussions, the meaning of "similarly situated" varies according to the context in which it is used.

stated Caucasian employees as compared to himself or the other African–American employees, the respective excuses for violating the "five day letter" rule, the number of days they remained absent before returning to work, the nature or severity of their medical conditions, or the extent to which their medical conditions were corroborated by independent, medical documentation. Moreover, the evidence in this case indicates that Williams may have falsified his medical records, a circumstance not shown by Williams to exist in other cases of reinstatement of Caucasian persons.

In sum, non-discriminatory factors could have accounted for Ford's different treatment of its employees who violated the "five day letter" rule. We therefore hold that the district court did not clearly err in concluding that Williams' bare statistics, without more, were insufficient in the present case to prove pretext.[4]

Accordingly, we affirm the judgment of the district court.

---

4. We note that a showing of "similarly situated" is not necessarily required in every discriminatory reinstatement case. Proof that Williams is "similarly situated" to the Caucasian employees is required in the present case only because Williams attempted to employ statistical evidence showing that he was treated more harshly than the Caucasian employees and that he was therefore a victim of unlawful race discrimination. Williams also could have sought to prove intentional race discrimination through a variety of other methods. For example, Williams could have attempted to show intentional race discrimination by producing direct evidence in the form of actions or remarks by Ford that reflected a discriminatory intent.