# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1057

_____

Shameika L. Gilmore,

          Appellant,

    v.

AT&T,

          Appellee

On Appeal from the
United States District Court
for the Eastern District
of Missouri.

_____

Submitted: November 7, 2002
Filed: February 21, 2003

_____

Before MURPHY, MELLOY, Circuit Judges, and FRANK,[1] District Judge.

_____

FRANK, District Judge.

Appellant Shameika Gilmore appeals the District Court's[2] order granting AT&T, her former employer, summary judgment on her claims of racial

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

discrimination and disability discrimination.[3]  For the reasons set forth below, we affirm.

## I.      Background

Appellant Shameika Gilmore ("Gilmore"), an African-American woman, worked as a customer service representative at AT&T's National Telemarketing Center in St. Louis, Missouri, from October 22, 1998, through June 3, 1999.  In her position at the call center, Gilmore handled inbound calls from current and potential residential customers.

Customer service representatives were paid hourly based upon the time that they were clocked-in to work, notwithstanding the amount of time that the customer service representative was "on-line" (*i.e.*, handling customer phone calls).  AT&T's Code of Conduct, with which Gilmore admittedly was familiar, stated that a customer service representative was expected to be on-line while clocked-in to work, unless that customer service representative was on a limited or scheduled break.  A customer service representative who was off-line without management authorization or who was not on a scheduled break was considered to be misusing company time in violation of the Code of Conduct.  Violations of the Code of Conduct were considered grounds for discipline, including termination.

Gilmore's termination occurred on June 3, 1999, after a series of attendance violations.  When these attendance violations occurred, Mike Chapman and Jeff Robinson were responsible for handling attendance issues and related disciplinary

---

[3]The District Court's order granted summary judgment in favor of AT&T on additional claims of religious discrimination, retaliatory discharge, and hostile work environment.  Gilmore has only appealed on the basis of the racial discrimination and disability discrimination claims.

matters at the call center. At the time Gilmore was terminated, her immediate supervisor was Team Leader Wendy Lamotta.

Gilmore's first absence from work occurred on November 25, 1998. Gilmore received a letter of warning for that absence that was later rescinded due to a change in the AT&T attendance policy. Gilmore was issued a letter of warning for her second absence that occurred on February 9, 1999. Gilmore missed work again from March 30, 1999, through April 2, 1999, for which she was issued a final warning. In the final warning, Gilmore was notified that any further absences could result in her termination.

On June 2, 1999, Gilmore spent a portion of the morning off-line complaining of severe physical pain. When notified of Gilmore's illness, Wendy Lamotta met with Gilmore to discuss the nature of her problem. At that time, Gilmore stated that she was suffering from stomach pain, but expressed concern that if she left the office, her absence would result in another attendance violation and her termination. Gilmore requested assurance from Lamotta that if she left, she would not be terminated for her absence. Lamotta met with Mike Chapman to discuss the disciplinary consequences if Gilmore were indeed to leave. Chapman stated that he would review the circumstances of the matter to determine whether disciplinary action would be necessary, but that he could not guarantee that no action would be taken. Lamotta related this information to Gilmore and further informed Gilmore that she needed either to leave work or to be on-line answering calls. In addition, Lamotta suggested that Gilmore call an ambulance. Gilmore declined to leave work.

Later that day, Lamotta and her fellow team leader, Mindy McFarland, monitored Gilmore's calls. Lamotta and McFarland observed that Gilmore spent much of the afternoon placing customers on hold for extended periods of time or telling customers about her physical problems. Ultimately, Gilmore was off-line for approximately 128 minutes that day.

Gilmore returned to work on June 3, 1999. Lamotta was on vacation that day, so Chapman and McFarland met with Gilmore to determine why Gilmore had been off-line for more than two hours on the previous day. Gilmore admitted that she had been off-line, but said that she remained clocked-in to avoid another attendance violation and to avoid the risk of termination. After discussing the matter privately with Chapman, McFarland notified Gilmore that she was terminated effective immediately because of her misuse of company time. Gilmore gathered her personal belongings and, as she was leaving the building, fell down approximately seven stairs.

After her termination, Gilmore filed formal grievances for workers' compensation and with her union. Ultimately, AT&T representatives and union officials came to an agreement under which AT&T would re-characterize Gilmore's termination as a suspension without pay and Gilmore would return to work as soon as she was cleared by her doctor after receiving treatment for injuries suffered as a result of her fall. However, even after being cleared to return to work by her doctor on August 5, 1999, Gilmore failed to do so. As a result, in late August 1999, AT&T withdrew its offer to reinstate Gilmore. Gilmore later asserted in her application for Social Security disability benefits and in deposition testimony that in August 1999, she was not physically capable of performing the essential functions of her job with or without reasonable accommodations.

Gilmore filed this lawsuit, alleging, among other things, that her termination was based upon her race and disability, in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"). AT&T moved for summary judgment on all of the claims raised in Gilmore's complaint. Relevant to the issues here on appeal, AT&T asserted that Gilmore had not demonstrated that she was discriminated upon based on her race. Further, AT& T asserted that Gilmore had not established a *prima facie* case of disability discrimination because she conceded that she could not perform her job functions at AT&T even with an accommodation.

The district court granted AT&T's motion for summary judgment on all of the claims, and Gilmore appealed the outcome of her race discrimination and disability discrimination claims.

Gilmore argues on appeal that summary judgment should not have been granted on her racial discrimination claim because she was terminated based upon her race. Specifically, Gilmore asserts that the district court ignored her evidence that white employees with similar attendance issues as hers had not been terminated by AT&T. In addition, Gilmore contends that her disability discrimination claim should not have been dismissed because AT&T withdrew its reinstatement offer because of her alleged disability. Gilmore asserts that any statements that she made as to her inability to perform her job functions, even with a reasonable accommodation, were conclusions that she made only because she lacked legal training.

## II.    Discussion

### A.    Standard of Review

We review *de novo* a grant of summary judgment, applying the same standard as the district court and viewing the record in the light most favorable to the nonmoving party. <u>Barrera v. Con Agra, Inc.</u>, 244 F.3d 663, 665 (8th Cir. 2001). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B.    Racial Discrimination

Gilmore alleges that the district court erred by granting summary judgment to AT&T on her claim of racial discrimination. To establish a *prima facie* case of racial discrimination, a plaintiff must show that: (1) she was a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she

suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently.  See Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).  Specifically, under the final prong of this test, Gilmore bears the burden to demonstrate by a preponderance of the evidence that there were individuals similarly situated in all respects to her who were treated differently.  Id.  The individuals used as comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  Id.  Once this *prima facie* case is established, the burden shifts to the employer to provide a legitimate reason for the adverse employment action.  See McDonnell Douglas Corp.  v. Green, 411 U.S. 792, 802 (1973).  Then, the burden shifts back to the employee to demonstrate that the reason articulated by the employer was a pretext.  See id. at 804.

Our review of the record supports the district court's conclusion that Gilmore failed to establish a *prima facie* case of racial discrimination.  Specifically, Gilmore has not demonstrated that the eight individuals that she identified as comparators are similarly situated to her.  Three of the individuals to which Gilmore compares herself are members of the same protected group as Gilmore.  Three other individuals are not similarly situated because Gilmore did not establish that the circumstances of their misconduct were comparable in severity or frequency to Gilmore's infractions. Finally, one of the individuals was not similarly situated because the supervisor who administered her discipline was not identified; another individual was not similarly situated because his discipline was not administered by the same supervisors who administered Gilmore's discipline.  Thus, based upon Gilmore's failure to provide any evidence that similarly situated employees who were not in the same protected class were treated differently, summary judgment was appropriately granted.

Furthermore, the district court properly recognized that even if Gilmore had established a *prima facie* case of racial discrimination, AT&T provided a legitimate reason for the employment decision to terminate Gilmore.  The record supports

AT&T's assertion that Gilmore's termination was due to her misuse of company time. Gilmore then failed to set forth any evidence to support her assertion that the proffered reason for her termination was pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. at 804. As AT&T provided a legitimate, non-discriminatory reason for Gilmore's termination, and Gilmore provided no evidence to support a finding of pretext, Gilmore's racial discrimination claims were properly dismissed.

## C.    Disability Discrimination

Gilmore alleges that AT&T's withdrawal of her reinstatement violated the ADA. To establish a *prima facie* case of disability discrimination, the plaintiff must demonstrate that she has a disability as defined by the ADA, that she was qualified with or without reasonable accommodation to perform the essential functions of her job, and that she suffered an adverse employment action because of her disability. Land v. Washington County, Minnesota, 243 F.3d 1093, 1095 (8th Cir. 2001). A plaintiff is only "qualified" if the individual: (1) meets the necessary prerequisites for the job, such as education, experience, and training; and (2) can perform the essential job functions, with or without reasonable accommodation. Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000).

Like the district court, we conclude that Gilmore failed to show that she is a qualified individual under the ADA. In her Social Security benefits application and in her deposition testimony, Gilmore conceded that she could not perform the essential functions of her job, even with reasonable accommodation, in August 1999. As recognized by the district court, while statements made to the Social Security Administration to secure disability benefits do not automatically preclude a successful suit under the ADA, a plaintiff who has sworn to his inability to work must "reconcile [these] seemingly contradictory statements." Lane v. BFI Waste Sys. of North America, 257 F.3d 766, 769-70 (8th Cir. 2001). Gilmore has neither claimed that her statements were inaccurate, nor has she provided any evidence to reconcile her

asserted inability to perform the essential functions of her job with her claim under the ADA. On this basis, the district court properly concluded that Gilmore was not a qualified individual under the ADA and thus that summary judgment on Gilmore's disability discrimination claim was appropriate.

In addition, the district court properly concluded that Gilmore failed to prove that AT&T's non-discriminatory reason for withdrawing her reinstatement was a pretext for disability discrimination. Admittedly, Gilmore failed to return to work after she was cleared by her doctor to do so. Gilmore asserts that she was not fully recovered and was unable to work when she received such clearance and further asserts that she did not understand the agreement between AT&T management and her union. However, these unsupported assertions do not render AT&T's decision not to reinstate her pretextual. Thus, the district court properly granted AT&T's motion for summary judgment on Gilmore's disability discrimination claim.

## III. Conclusion

In accordance with the foregoing, we affirm the district court's judgment in favor of AT&T. In addition, we grant AT&T's motion to strike portions of the AT&T Code of Conduct and excerpts from the deposition of Dr. Joseph Hanaway that were included with Gilmore's appellate brief, as they were not set forth in the record before the district court. See Fed. R. App. P. 10(a); see also Rivers-Frison v. Southeast Mo. Community Treatment Ctr., 133 F.3d 616, 619 n.2 (8th Cir. 1998).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-