# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1735

———————

George D. Philip,                     *

                                    *

        Plaintiff - Appellant,    *

                                    *   Appeal from the United States

    v.                        *   District Court for the

                                    *   District of Minnesota

                                    *

Ford Motor Company,        *

a Delaware Corporation,     *

                                    *

        Defendant - Appellee.   *

———————

Submitted: February 17, 2005
Filed: July 7, 2005

———————

Before BYE, HEANEY, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

George D. Philip appeals the district court's[1] grant of summary judgment in favor of Ford Motor Company (Ford) on his claims of race discrimination arising out of Ford's removal of Philip from a "25 mile driver-inspector" job in 1998. We affirm.

———————

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

This Court set forth the underlying facts of the case in its opinion, <u>Philip v. Ford Motor Company</u>, 328 F.3d 1020, 1022-23 (8th Cir. 2003). Philip, an African-American, worked for Ford at its Twin Cities Assembly Plant from April 1988 until February 1998, when he was placed on "no work available status." Philip filed suit in 1999 claiming he was disabled and was the victim of disability discrimination. He also claimed discrimination on the basis of his race and religious beliefs. Further, Philip alleged that he had been the subject of retaliation.

On June 13, 2001, the district court granted summary judgment, effectively dismissing Philip's federal and state claims for racial discrimination regarding events that occurred prior to 1997. The June 13, 2001 order was never appealed. On March 8, 2002, the district court entered a second summary judgment order that dismissed the remainder of Philip's claims. Philip appealed this order. On May 21, 2003, this Court affirmed the dismissal as to the disability discrimination, but reversed the order with respect to Philp's post-1997 race discrimination claim. In that claim, Philip alleged that Ford refused to place him in a permanent position because of racial motivations and that Ford grandfathered two similarly situated, white employees into the same positions, despite their lack of seniority. <u>Philip</u>, 328 F.3d at 1026.

In October 2003, Ford moved for summary judgment on the remaining claims, arguing that Philip could not present sufficient evidence that similarly situated employees who were not members of Philip's protected class were disparately treated, as required to sustain his remaining race claims. On February 12, 2004, the district court granted Ford's motion for summary judgment, rejecting Philip's remaining race discrimination claims. Philip now appeals that decision.

We review de novo the district court's grant of summary judgment. <u>Wheeler v. Aventis Pharm.</u>, 360 F.3d 853, 857 (8th Cir. 2004). We review "the record in the light most favorable to the nonmoving party." <u>Gilmore v. AT&T</u>, 319 F.3d 1042, 1046 (8th Cir. 2003). Summary judgment is appropriate if there is "no genuine issue

as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Accordingly, to survive summary judgment Philip must present facts adequate to permit an inference of racial discrimination. Craik v. Minnesota State Univ. Bd., 731 F.2d 465, 469 (8th Cir. 1984).

To make a prima facie showing of discrimination, Philip must prove that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently. Gilmore, 319 F.3d at 1046. In the present case, the first three prongs of this test are not in dispute. Under the fourth prong, Philip bears the burden to proffer "specific, tangible evidence" that employees who were "similarly situated in all respects" to him received different treatment from Ford. Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109 n.4 (8th Cir. 1998) (first quote); Gilmore, 319 F.3d at 1046 (second quote). If Philip establishes the prima facie case, the burden shifts to Ford to articulate a legitimate, non-discriminatory reason for the adverse employment action. Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994).

Philip argues that the district court applied the incorrect standard regarding the "similarly situated" prong of the test. The district court stated that to satisfy the final prong, Philip was required to identify individuals who "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). He suggests, citing this Court's decision in Wheeler, that this standard was too stringent and that we should apply the Wheeler articulation. Wheeler, 360 F.3d at 857 (stating the standard to be "whether the employees are involved in . . . the same or similar conduct and are disciplined in different ways."). Even if we assume that Clark is a more stringent statement of the "similarly situated" standard than Wheeler, as Philip alleges, Philip has not met his burden to produce tangible evidence, even under his articulation of a less burdensome Wheeler standard.

After careful review of the record in this case, we conclude that Philip failed to establish a prima facie case of racial discrimination because he did not prove that employees similarly situated to him were treated differently. Philip cites the affidavits by the plant physician, Dr. Zubieda Kahn, and by a Committeeperson for the United Auto Workers at the Twin Cities Assembly plant from 1996 through 1999, Nancy Schillinger, as evidence that employees received disparate treatment. It is unnecessary to reach any conclusions regarding the admissibility of these affidavits because, even if they are admissible, they only show that disparate treatment may have occurred at the plant. They do not demonstrate that individuals who received disparate treatment were similarly situated to Philip.

Kahn testified as to a number of instances of possible disparate treatment by Ford. For example, Kahn testified that Human Resources Manager Jack Halverson would interfere with the medical placement of black employees and that the workers' compensation representative used derogatory language towards a black employee. Kahn also testified that Ford personnel failed to follow her medical recommendations regarding the placement of black employees. However, Kahn's affidavit does not provide any evidence as to whether those who were treated differently were similarly situated. It does not connect what Kahn observed to Philip's situation.

Ms. Schillinger's affidavit also suggests that black employees were treated differently. For example, she testified that two Caucasian employees were treated differently based on race when they sought reclassification to driver-inspector positions. The district court correctly concluded, however, that Schillinger's affidavit offers no proof regarding the "comparability of the positions" into which the two Caucasians were place. It also did not offer proof regarding the comparability of the qualifications or seniority of the two Caucasians who received driver-inspector positions. Schillinger's affidavit does not show how the grandfathering of the two Caucasians and the treatment of Philip by Ford are connected.

Although the Schillinger and Kahn affidavits may offer evidence of disparate treatment, they do not, on their face, establish the requisite showing of sufficient specific, tangible evidence that employees who were "similarly situated in all respects" to Philip received disparate treatment from Ford to sustain Philip's claim. Gilmore, 319 F.3d at 1046. Accordingly, Philip failed to meet his burden, thus summary judgment was appropriately granted.

For the foregoing reasons, we affirm.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. After reviewing the record, I conclude that Philip has presented sufficient evidence showing that Ford treated similarly situated white employees more favorably than Philip.

Our cases require a plaintiff to show that he or she is similarly situated to employees offered for comparison in all *relevant* respects to meet the prima facie burden. Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001); see also McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) (explaining that a plaintiff need not show disparate treatment with an identically situated employee but only sufficient similarity to support the minimal inference that the differences in treatment "may be attributable to discrimination"); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000) (requiring that comparable employees share the "common features essential to a meaningful comparison"). The set of relevant factors is not fixed; rather, courts must determine which factors are relevant to each case. See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). While factors such as the supervisor, and the conduct engaged in, are relevant when a plaintiff alleges differences in disciplinary treatment, see, e.g., Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000), they are not necessarily relevant to cases arising under other circumstances.

Philip contends that Ford's failure to allow him to remain in the twenty-five mile driver position after it was reclassified was discriminatory because other employees whose jobs were reclassified were permitted to remain in their positions. In opposition to summary judgment, he offered the affidavit of Nancy Schillinger, claiming that two white male employees were "grandfathered" into positions after they were reclassified. (Appellant's App. at 34.) The affidavit clarifies that "grandfathering" refers to the practice of allowing an employee to remain in a job after reclassification rather than placing the job up for bid. (Id.)

Philip's claim is not based on disciplinary action and there is no allegation that his performance was inadequate. Rather, Philip alleges that a portion of the company-wide collective bargaining agreement was applied to remove him from his position and was not applied to white employees whose jobs were reclassified in a similar fashion. Unlike disciplinary decisions, which may be made by an immediate supervisor, a policy dictated by a collective bargaining agreement will be implemented with some degree of uniformity. Applying the requirements of Runyon to non-disciplinary claims like Philip's places an inappropriate burden on plaintiffs to show similarities irrelevant to their claims. The positions of Philip and the white employees offered for comparison were reclassified, and should have been opened for bid and awarded on the basis of seniority. These employees are therefore similarly situated in all *relevant* respects. Applying the requirements of Runyon to non-disciplinary claims like Philip's places an inappropriate burden on plaintiffs to show similarities irrelevant to their claims. Accordingly, I would reverse the judgment of the district court and remand this case for further proceedings.

_____