Lamonte R. YOUNG, Sr., Appellant,

v.

AMERICAN AIRLINES,
INC., Respondent.

No. ED 85898.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 13, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 19, 2006.

Application for Transfer Denied
Feb. 28, 2006.

---

Lee Clayton Goodman, St. Louis, MO, for appellant.

David H. Luce, Carmody MacDonald P.C., Clayton, MO, for respondent.

KENNETH M. ROMINES, Judge.

Plaintiff–Appellant Lamonte R. Young, Sr. ("Young" or "Appellant") appeals from the decision of the trial court granting Defendant–Respondent American Airlines's ("American") motion for summary judgment. Young, an African–American, brought an action against his employer, American, alleging wrongful termination, pursuant to the Missouri Human Rights Act, Section 213.050 RSMo. (2000),[1] premised upon alleged racial discrimination. The incident for which Young was fired involved an altercation with two white employees over the use of a telephone in the company break room. Young admitted violating company policy by making offensive and threatening comments, and he was subsequently fired pursuant to company policy. In a written statement made before he was fired, however, Young also alleged that two white employees made comments to him that were racially offensive. The two white employees admitted participating in the altercation and to making rude comments, but they did not admit to making the racially offensive comments, which would be a violation of company policy. The white employees were punished for their conduct, but they were not fired. We cannot say with confidence on this record that American is due judgment as a matter of law, and thus, we reverse and remand.

## STANDARD OF REVIEW

We consider the record from an appeal of summary judgment in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993) (hereinafter "*ITT*"). Facts established by affidavit, or other proof in support of a party's motion, are taken as true unless

---

**1.** All statutory references are to RSMo. (2000), unless otherwise indicated.

contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-moving party the benefit of all reasonable inferences from the record below. *Id.* The propriety of summary judgment is purely an issue of law, and thus, our review is *de novo.* *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

Our review of the record, viewed in the light most favorable to Young, reveals that Young was employed by American from 2 October 1995 until he was fired on 18 October 2002. Young was fired as a direct consequence of an altercation with two fellow employees on 9 October 2002. During his seven years of employment with American as a fleet service clerk, Young had a satisfactory work record and generally performed his duties without incident. Prior to the incident in question, Young had never been subjected to a hostile work environment, including never experiencing any inappropriate behavior, jokes, or comments because of his race.

In 2002, American instituted a new Rules of Conduct for its employees. One of the key components of American's new set of rules was to prohibit offensive or discriminatory speech or conduct on company grounds. The rules also provide strict punishment for employees who violate the rules. As pertinent to this case, Rule of Conduct 32 states:

> Behavior that violates the company's Work Environment Policy, even if intended as a joke, is absolutely prohibited and will be grounds for severe corrective action, up to and including termination of employment. This includes, but is not limited to, threatening, intimidating, interfering with, or abusive, demeaning, or violent behavior toward another employee, contractor, or vendor, while either on or off duty. Behavior that is

also hate related will result in immediate termination of employment, regardless of length of service or prior employment record.

American defined "hate-related behavior" as:

> [A]ny action or statement that suggests hatred for or hostility against a person because of his or her race, sexual orientation, religion, or other protected characteristic, including, but in no way limited to, bigoted slurs, drawings, and symbols such as a hangman's noose, a swastika, or graffiti.

The record reveals that American went to great lengths to ensure that all of its employees were apprised of and familiar with these new policies. American specifically warned its employees that, pursuant to Rule 32, it would have zero tolerance for hate-related conduct, and immediate dismissal would result for any violation. Furthermore, pursuant to company policy, Young signed a statement acknowledging that he had read and understood Rule 32.

The incident that gave rise to the underlying litigation took place on 9 October 2002, and occurred in a company break room. Young was using the phone in the break room when a fellow employee, Chris White ("White"), entered the room to use the phone. According to White, Young was making a personal call, and White claimed that he needed to make an important call for company business. White told Young to get off the phone several times, but Young refused each request. Shortly after White asked Young to get off the phone, another American employee, Kevin McAndrew ("McAndrew"), entered the room and also asked Young to get off the phone.

According to Young's initial written account of the incident, McAndrew said, "hang up the [expletive deleted] phone."

There was also evidence that Young responded by calling McAndrew a "punk gay" and a "pussy." Young further alleged in his statement that McAndrew said, "hang up the phone you peace a[sic] 'shit,'" to which Young admitted responding with an expletive. However, Young also alleged that McAndrew used the term "black ass," as well as other expletives, during this exchange.

Young also alleged that McAndrew actually reached toward the phone as if to hang it up. According to both White and McAndrew, Young response was to stand up, make a threatening gesture with the phone, and threaten to hit McAndrew with the phone. During this exchange, Young also said, "I'll hit you with the phone you [expletive delete] faggot." Feeling threatened, McAndrew backed away and eventually exited the room.

Following this exchange between Young and McAndrew, White approached Young and told him that he was gay and that his use of the word faggot was as if he had used the "N word" to Young. White subsequently admitted to using the term "N word." However, Young also claimed in his written statement that during this exchange White used the actual word to which the term "N word" refers. White denied ever using the actual word at any time.

Immediately after the confrontation, Julie Davis ("Davis"), an American personnel supervisor, began an investigation of the incident. Davis interviewed all three men and took their statements. Davis eventually determined that Young's actions constituted two separate violations of Rule 32, either of which justified termination: first, Young's threatening gesture toward McAndrew with the phone, and second, his use of the word "faggot."

Furthermore, Davis found that McAndrew had used vulgarity during the en-counter. As a result, McAndrew was reprimanded in a written letter that encouraged him to "consider the seriousness" of his actions, and to "correct these problems." However, Davis did not find that McAndrew's conduct constituted a violation of the "hate related" provision of Rule 32, and thus, he was not terminated.

Finally, Davis found that White had "endangered himself in violating American Airlines rule of conduct # 32" by using the term "the 'N' word" during the confrontation with Young. However, Davis did not find that White violated the "hate related" provision of Rule 32, and thus, he was not fired for his conduct.

After Davis fired Young, Young contacted his union representative and filed a grievance for wrongful termination. American subsequently denied Young's grievance, Young appealed this decision, and a full arbitration hearing was held. At the hearing, several witnesses testified, including Young, White, McAndrew, and Davis. During the course of the arbitration hearings, Young alleged that McAndrew had made even more offensive comments during the confrontation. Specifically, he alleged that McAndrew said, "get off the phone you black piece of shit." Young further alleged that McAndrew said, "get off the phone or I will hang up the phone for you, you black ass hole."

The arbitrators ultimately denied Young's appeal, and found that American had just cause to terminate his employment. Following the arbitrator's decision, Young filed this action in the circuit court. After a period of discovery, American filed a motion for summary judgment, arguing that the circuit court should dismiss Young's action primarily because he could not demonstrate that his conduct was similar to that of either White or McAndrew,

and thus, American was entitled to judgment as a matter of law. The circuit court initially denied American's motion for summary judgment. However, after American filed a motion for reconsideration of its original motion, the circuit court, without providing a written opinion explaining its rationale, reversed its original ruling and dismissed Young's case.

### *DISCUSSION*

At its core, this case involves determining whether a private company violated state and federal anti-discrimination law when it fired an African–American employee who admitted violating company policy during a confrontation with two white employees, where the white employees admitted participating in the confrontation, but did not specifically admit to violating company policy, despite the black employee's allegations to the contrary. This court, of course, need not decide the difficult factual questions involved; they will be left to a jury to decide.

The central issue before this court is whether the record reveals that these employees were similarly situated to the extent that American's firing of Young amounted to illegal discriminatory treatment, where American did not fire the two white employees involved in the same confrontation and who allegedly made offensive comments in violation of the "hate related" provision of Rule 32, but unlike Young, did not admit to such rule violations. More specifically, since this appeal involves a review of the trial court's grant of summary judgment in favor of American, we may only consider the limited question of whether American was entitled to judgment as a matter of law, where Young has alleged that his firing amounted

to disparate treatment, and thus, a violation of the law. Accordingly, Young argues that several factual issues remain, and thus, summary judgment was improper. Because we believe that important factual questions indeed remain in dispute, and should be decided by a jury, we reverse the trial court's grant of summary judgment and remand for a trial on the merits.[2]

■ Young brought his claim under the Missouri Human Rights Act (the "Act"), Section 213.010 RSMo. (2000) *et seq.,* which essentially provides, in pertinent part, that it is an unlawful employment practice in Missouri to "discharge any individual . . . because of such individual's race [or] color. . . ." *Id.* at Section 213.055. Furthermore, pursuant to the Missouri Supreme Court's decision in *Midstate Oil Co., Inc. v. Missouri Com'n on Human Rights,* 679 S.W.2d 842, 845–46 (Mo. banc 1984), Missouri courts must evaluate claims arising under the Act according to the methodology established by the U.S. Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Under the methodology established in *McDonnell Douglas,* courts hearing claims arising under Title VII of the Civil Rights Act of 1964 use the following "burden shifting" analysis: (1) the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination; (2) if the plaintiff carries this burden, then the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its conduct; and (3) if the employer satisfies this burden, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that

---

**2.** This is a close case; if we had the trial court's analysis before us, we might conclude

differently.

the employer's articulated reasons are pretextual. *Midstate Oil Co.*, 679 S.W.2d at 845.

■ Finally, in order for an employee to make out a prima facie case for employment discrimination in the absence of direct or circumstantial proof, the employee must establish the following four elements: (1) that the employee is a member of a protected group; (2) that the employee met the legitimate expectations of his or her employer; (3) that the employee suffered an adverse action; and (4) that circumstances exist which give rise to an inference of discrimination. *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir.2004). Furthermore, many federal courts recognize that the proof required to establish a prima facie case varies in different factual situations. *Boner v. Board of Comm'rs*, 674 F.2d 693, 696 (8th Cir. 1982).

In this case, American argued in its motion for summary judgment that it was entitled to judgment as a matter of law because Young failed to establish two of the four elements of his prima facie case of employment discrimination.[3] First, American argued that Young failed to establish the second element: that he was qualified to perform his job; and, that he failed to establish the fourth element: that circumstances exist giving rise to an inference of discrimination. We address each element individually.

■ With regard to the second element of Young's prima facie case, we find Amer-

ican's argument that Young was not qualified to perform his job wholly without merit. In its brief, American argued that Young failed to establish this element essentially because he violated Rule 32 during the incident in question. However, our review of the relevant case law reveals that this rationale completely misses the mark. The relevant analysis focuses on the employee's overall work record and general ability to perform their job duties, not whether the employee violated a company rule or policy on one occasion, such as in this case.[4] In this case, American's argument regarding the second element of Young's prima facie case is without a basis.

■ Regarding the fourth element of Young's prima facie case, American essentially argues that the facts and circumstances of this case simply do not give rise to an inference of intentional discrimination. Specifically, American argues that Young's case fails because Young was not "similarly situated" to White and McAndrew. Simply, Young's conduct was substantially more serious than that of White and McAndrew, and thus, it justified more severe punishment.

■ We note that the fourth element of a plaintiff's prima facie case may be established with evidence of "actions by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a[n illegal] discriminatory criterion....'" *Boner*, 674 F.2d at 696 (*quoting Furnco Construction Corp. v. Waters*, 438

---

3. American conceded in its brief that Young satisfied elements 1 and 3 of his prima facie case, to wit: (1) that Young is a member of a protected class, i.e., he is an African American; and (3) that he suffered an adverse action, i.e., that his employment at American was terminated as a result of his conduct. We agree, and thus, we do not address these elements of Young's prima facie case.

4. *See, e.g., Boner*, 674 F.2d at 696–97 (holding that plaintiff black employee's racial discrimination claim was meritless, in part, because plaintiff's "work record and [job] performance were unacceptable and simply would not improve ... [and plaintiff] could not, or would not perform his job adequately.").

U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)).

■ In evaluating the merits of the fourth element, federal courts generally recognize that "instances of disparate treatment can support a claim of pretext," but the plaintiff bears the burden of establishing that the employees are *similarly situated* in all relevant respects." *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir.1994) (emphasis added). Employees are "similarly situated" when they "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Wheeler*, 360 F.3d at 857 (8th Cir.2004). Furthermore, the test to determine whether two employees are similarly situated varies at each stage of the *McDonnell Douglas* analysis. *Id.* At the prima facie stage, such as here, the burden is "not onerous." *Id.* (*quoting Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

In this case, the record clearly reveals that Young was punished more severely than either White or McAndrew. Furthermore, the record is clear that they were all involved in the same general incident. However, the following critical question remains: was Young's conduct the same as or sufficiently similar to that of White or McAndrew, such that they were similarly situated under the law?

Based upon our review of the record, viewed in the light most favorable to Young, and by applying the low threshold of proof required at this stage of the proceeding, we believe that Young has established a prima facie case that he was similarly situated to White and McAndrew. This holding is premised upon our finding that Young presented sufficient evidence that either White or McAndrew, or both, violated the "hate related" provision of Rule 32 in making racially offensive comments to Young.[5] Specifically, we find Young's hand-written statement, dated 9 October 2002, particularly compelling. In this statement, Young alleged that McAndrew told him to "hang up the [expletive deleted] phone." Young further alleged that McAndrew said, "hang up the phone you peace a [sic] 'shit.'" Finally, Young claimed that McAndrew used the term "black ass" as he was leaving the room. Regarding White, Young alleged that he not only used the term "N word" while explaining that he was offended by Young's use of the term faggot, but also that he used the actual word during this exchange.

We believe Young's allegations that White and McAndrew used words that, by any objective or subjective standard, would be highly offensive under Rule 32 to any reasonable African–American, effectively put American on notice that his conduct was similar enough to that of White or McAndrew to warrant similar treatment. We acknowledge American's argument that Young was not similarly situated to White or McAndrew because Young actually admitted violating company policy, whereas neither White nor McAndrew admitted using these key words. Furthermore, we understand the difficult position American was in, as this is a very difficult case. Nevertheless, we find that Young made a preliminary showing that he satisfied the fourth element of his prima facie case.

■ Therefore, because we find that Young made out a prima facie case that he

---

5. We note, however, that it is not for this court to decide whether White or McAndrew actually violated Rule 32. Rather, this is a factual question for the jury. We merely hold that Young established a prima facie case that his conduct was the same as or similar to that of White and McAndrew.

was similarly situated with White and McAndrew, we hold that American was not entitled to judgment as a matter of law. Furthermore, Young has argued that the trial court erred in granting summary judgment because there were important factual questions to be resolved. As we already noted, the overarching question is whether Young's conduct during the incident was sufficiently similar to that of White and McAndrew to permit an inference of disparate treatment. Fact resolution remains as to at least the following questions: (1) did McAndrew say "hang up the phone you peace a [sic] 'shit,'" and if so, did this violate the "hate related" provision of Rule 32; (2) did McAndrew use the term "black ass," and if so, did this violate the "hate related" provision of Rule 32; (3) did White use the actual word to which the term "N word" refers, and if so, did this violate the "hate related" provision of Rule 32; and (4) did White's admitted use of the term "N word" constitute a violation of the "hate related" provision of Rule 32. Because the answers to these important factual questions are dispositive of the ultimate legal question, summary judgment in favor of American was error.

## CONCLUSION

Accordingly, because we believe factual questions remain in dispute that are dispositive of the critical legal question in this case, we hold that the trial court's grant of summary judgment was improper. Accordingly, we reverse the trial court's grant of summary judgment in favor of American, and remand.

GARY M. GAERTNER, SR., P.J., and GEORGE W. DRAPER III, J., concur.