

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| G. STEVEN COX, | ) |
| | ) |
| Appellant, | ) WD76616 |
| | ) |
| v. | ) OPINION FILED: August 5, 2014 |
| | ) |
| KANSAS CITY CHIEFS FOOTBALL CLUB, INC., | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable James F. Kanatzar, Judge

Before Division Four:  Alok Ahuja, Chief Judge, Presiding, Cynthia L. Martin, Judge and
Wayne P. Strothmann, Special Judge

G. Steven Cox ("Cox") appeals a judgment in favor of the Kansas City Chiefs Football Club ("Chiefs") entered following a jury verdict in an age discrimination suit. Cox claims the trial court abused its discretion in the exclusion of certain evidence at trial, and committed plain error in failing to intervene during the Chiefs' closing argument.  Finding no error, we affirm the trial court's judgment.

## Factual and Procedural Background[1]

Cox was hired in 1998 by the Chiefs as a maintenance manager. At the time, the Chiefs' organization was run by Carl Peterson ("Peterson"), who held the titles of President and General Manager. Peterson was responsible for all of the Chiefs' football and business operations and reported to Clark Hunt ("Hunt"), the Chiefs' Chairman and CEO.

In 2008, Peterson resigned. As a part of an effort to reorganize, restructure, and increase efficiencies, Hunt decided to divide football and business operations. Scott Pioli ("Pioli") was hired as the General Manager in January 2009 to run football operations, which were primarily concerned with building and fielding a competitive football team. Mark Donovan ("Donovan") was hired in May 2009 as the Chief Operating Officer. Donovan reported to Denny Thum ("Thum"), who had been named President. Donovan and Thum were responsible for business operations which included payroll, marketing and stadium operations.

Cox's maintenance position was in the Stadium Operations Department. Cox reported to Steve Schneider, the Director of Stadium Operations ("Schneider"), who reported to Donovan.

Schneider was terminated by the Chiefs in January 2010. Cox's responsibilities increased around that same time when massive stadium renovations were undertaken. Cox assumed responsibility for management of the hourly construction and repair

---

[1]We view the evidence "in the light most favorable to the result reached by the jury, giving the [Chiefs] the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456-57 (Mo. banc 2006).

employees, and was given a raise. Until Schneider was replaced, Cox reported directly to Donovan.

Cox talked to Donovan in March 2010 about making a part-time janitor, Russ Crowley ("Crowley"), a full-time employee. Donovan agreed. Cox also wanted to increase Crowley's hourly wage. Donovan would not agree to the wage increase because Crowley was already being paid a higher hourly wage than mandated by the Collective Bargaining Agreement ("CBA"), and because the move to full-time made Crowley eligible for valuable benefits. Donovan specifically instructed Cox that Crowley's pay should be left as is.

In April 2010, the Chiefs hired David Young as Vice-President of Stadium Operations ("Young") and Brandon Hamilton as Director of Facilities ("Hamilton"). Thereafter, Cox reported to Young, who reported to Hamilton, who reported to Donovan.

Through the summer of 2010, Cox was having difficulties in the performance of his additional job responsibilities, including budget compliance, scheduling, completing checklists, and turning in labor sheets for union workers on a timely basis. He was counseled periodically about his performance issues by Hamilton and Young. Cox's performance did not improve despite the efforts to counsel him.

In early September 2010, Cox emailed the personnel manager for stadium operations, Heather Coleman ("Coleman") and instructed her to "bump" Crowley's hourly wage from $14.11 to $16.50. Cox did not copy Donovan or Kristen Krug, the Chiefs' Director of Human Resources ("Krug"), on the email. Cox admitted at trial that he knew

3

raising Crowley's pay violated Donovan's instructions. Cox also testified that he knew the CBA did not require the raise, and that he simply felt Crowley deserved a raise.

Krug learned about Crowley's pay increase in October 2010. Young was advised. Young felt he needed to recommend Cox's termination. Young informed Donovan about the raise Cox gave Crowley and recommended Cox's termination. Donovan was shocked. Donovan testified that Cox's decision to give Crowley a raise after being instructed not to do so created a "real issue of trust." Though he was reluctant to make changes during the football season, Donovan agreed termination was required given Cox's deliberate disregard for his instructions.

Cox was terminated during a meeting with Krug, Hamilton, and Young on October 14, 2010. Cox was told that he was being terminated for poor performance, and was given examples, including the unauthorized Crowley pay raise. Cox later told another Chiefs' employee, Brenda Sniezek, that he had been terminated because he gave Crowley a raise in violation of Donovan's instructions. At the time of his termination, Cox was 61 years old. His position was later filled by a 37-year old.

Cox filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR"). In the Charge, Cox stated that the Chiefs told him he had been fired for performance reasons, including the Crowley pay raise. Cox alleged in his Charge a single, discrete act of age discrimination on the day of his termination. When Cox filed suit following issuance of a right to sue letter, his petition similarly alleged a single, discrete act of age discrimination on the date of his termination.

4

Cox's case was tried to a jury.  After a 14-day trial, the jury returned a verdict in favor of the Chiefs on Cox's claim of age discrimination.  Cox appeals.

## Analysis

Cox raises three points on appeal urging an abuse of discretion in the exclusion of evidence at trial and in the denial of discovery, a fourth point on appeal claiming plain error in permitting alleged inflammatory argument by the Chiefs during closing, and a fifth point on appeal arguing that the aforesaid errors cumulate to require a new trial.  We address the points in turn.

### *Point One*

In his first point on appeal, Cox claims that the trial court abused its discretion "in ordering a blanket exclusion of testimony and evidence from and about 17 or more former employees."  Cox claims that the excluded evidence was "related to [the Chiefs'] systematic elimination of older front office employees."  Cox claims the excluded evidence was "highly relevant" because "it would have demonstrated [the Chiefs'] discrimination against other front office employees on the basis of their age," and "would have demonstrated [the Chiefs'] discriminatory motives and/or intent."  Cox thus sought to offer evidence about the termination of 17 other employees for two distinct reasons: (i) to establish a pattern and practice by the Chiefs' on the business side of its operations of discriminating against older employees; and (ii) as circumstantial evidence permitting an inference that the stated reason for terminating Cox was pre-textual.

**(i)** *Standard of Review*

We review a trial court's decision to exclude evidence for an abuse of discretion which Cox has the burden of establishing. *Hemphill v. Pollina*, 400 S.W.3d 409, 413 (Mo. App. W.D. 2013). "'A trial court has great discretion in determining whether evidence should be excluded, and its decision is given substantial deference on appeal.'" *Id.* (quoting *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 195 (Mo. App. W.D. 2012)). "When reviewing for an 'abuse of discretion,' this Court presumes the trial court's ruling is correct and reverses only when the ruling is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013) (internal quotation omitted). "We will not reverse the trial court's judgment for failure to admit evidence 'unless the error materially affected the merits of the action and we find a substantial or glaring injustice.'" *Hemphill*, 400 S.W.3d at 413 (quoting *Khoury*, 368 S.W.3d at 195); *see also Williams v. Trans States Airlines*, 281 S.W.3d 854, 872 (Mo. App. E.D. 2009) ("Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative.").

**(ii)** *The Trial Court's Exclusion of Testimony From and About 17 Former Chiefs' Employees and Cox's Related Offers of Proof*

The Chiefs sought an *in limine* ruling to exclude testimony: (i) regarding current and past employment related lawsuits and complaints filed with state or federal agencies against the Chiefs (2 former employees had age discrimination cases pending); and (ii)

6

from or about 17 former employees of the Chiefs[2] whom the Chiefs anticipated Cox would call to testify about the circumstances of their departures from employment. The Chiefs argued that these former employees were not sufficiently similarly situated to Cox's circumstances to be probative of his discrete claim of discriminatory termination, and that the evidence could not be separately offered to establish a pattern or practice of discrimination because Cox did not allege this form of discrimination in his MCHR Charge or in his petition. The Chiefs thus argued that the evidence was irrelevant and unduly prejudicial. On February 8, 2013, the trial court granted the Chiefs' *in limine* motion without explanation.

Cox sought clarification of the *in limine* ruling. Just before *voir dire* on February 11, 2013, the trial court stated:

> My order granting that motion *in limine* pertains to you calling these 17 witnesses to testify that they were terminated, they have a case of discrimination pending against the Chiefs, and I suppose [that] they're over forty. If you want to call these witnesses for some other purpose, that's outside of my ruling on this motion *in limine*.

The trial court's *in limine* ruling was frequently revisited during the 14-day trial. Consistent with the *in limine* ruling, the trial court repeatedly sustained objections to discussion of the ages of, circumstances for termination of, or litigation commenced by, the 17 former employees, and often discussed the rationale for its ruling. For example, after Cox's opening statement, the trial court told the parties:

---

[2]The 17 former employees identified in the motion in limine were: Brenda Sniezek, Larry Clemmons, Anita Bailey, Ann Roach, Carol Modean, Nadine Steffan, Lamonte Winston, Carl Peterson, Doug Hopkins, Tom Stephens, Ken Blume, Evelyn Bray, Pam Johnson, Lisa Siebern, Bill Newman, Gene Barr, and Pete Penland.

[M]y ruling for keeping the [17] out was that they weren't similarly situated. They worked in other departments or were fired for different reasons and at different times.

During the testimony of Brenda Sniezek, (one of the 17), the court sustained an objection to a question that would have elicited a discussion of the circumstances of her termination, and noted:

You'll have an opportunity to make an offer of proof outside the hearing of the jury to avoid any prejudicial effect of this type of testimony. . . . We've spent a great deal of time talking about this issue. . . . [My ruling] is interlocutory until I change it. You ask me to change it by coming to the bench and ask me to change it. That ruling still stands until then and you know that. . . .We've talked about this already. . . . It's not coming in. . . . . It's prejudicial effect outweighs any probative value. I think we've talked [about] that six different ways to Sunday.

Cox made an offer of proof through Sniezek. She testified in the offer of proof that she worked in the Customer Relations Department, and that she had been given notice the entire department was going to eliminated by the end of 2010. She felt age was becoming an issue, and that a review she received from Donovan in March 2010 was "a joke." Sniezek was terminated on January 26, 2011, and was told it was due to a reduction in force, and that her position had been eliminated. Sniezek said a 32 year old man was later hired to handle community relations.

Pioli testified in an offer of proof about the terminations of Lamonte Winston (one of the 17) and Lisa Sieburn (one of the 17). He testified that both worked on the football side of the Chiefs' operations, that each was over 40, and that each was replaced by younger employees.

8

Ann Roach (one of the 17) testified in an offer of proof that she was asked to retire in 2010 by Thum after 43 years of employment.

After these offers of proof, counsel engaged in extended discussion with the trial court about its *in limine* ruling, leading to the following announcement by the trial court:

> I anticipate that plaintiff's counsel is going to make these offers of proof on all the 17 people who the Court has ruled certain areas of their testimony are not admissible: the fact that they were terminated, the fact of what their age is, and the fact that they have lawsuits pending against the Chiefs currently. And just to reiterate so the record is clear, that ruling is based upon the fact that these peoples' terminations, the people who terminated them were not decision makers in the termination of the plaintiff in this case and also because the plaintiff did not plead a pattern and practice, did not plead pattern and practice, did not plead hostile work environment, and for those reasons and other reasons that I'm not going to go into that were cited and argued by defense counsel in their motions and in their oral arguments, these witnesses are going to be excluded from those three areas of any kind of testimony that would touch upon those three areas. . . . [T]he primary thing was that you didn't plead pattern and practice and that these employees were not similarly situated to Mr. Cox.
>
> . . . .
>
> The reason why the court is keeping these 17 witnesses out of the case as it pertains to those three subject areas, and that is the Court heard extensive argument on this and was convinced that they were not similarly situated to the plaintiff and also that the plaintiff did not plead pattern and practice or hostile work environment, and for those reasons and other reasons that I'm not going to go into that were argued by the defense counsel, I've made that ruling. That ruling is going to stand unless I'm convinced to change my mind, and only if I tell you all that I've changed my mind. I've heard a great deal of testimony in this case and I don't anticipate changing my mind but the only thing you all need to worry about is unless I tell you I'm changing my order, the order stands.

The trial court asked Cox if he planned to make offers of proof from each of the 17 former employees, and Cox confirmed that he did.

9

Cox called Dan Crumb ("Crumb") who was hired as the Chief Financial Officer in 2010. After Crumb was released as a witness, Cox's counsel identified a series of questions that he "would like an opportunity" to ask Crumb, most dealing with former employee Larry Clemmons (one of the 17). Though counsel called his summary an offer of proof, he did not at anytime advise how Crumb would have answered the questions counsel would like to have posed.[3]

Cox did make an offer of proof through Gene Barr (one of the 17) who testified that he was the Security Manager for the Chiefs until he resigned in late summer 2010. Barr testified he was 61 at the time of trial. He testified that about 6 weeks before he resigned, the Chiefs hired Jason Stone ("Stone"), a man in his mid-30's, as the Director of Security. Barr did not get along with Stone, leading to his decision to resign. Barr confirmed that he never reported to Hamilton or Young, Cox's supervisors.

Tom Stephens (one of the 17) testified in an offer of proof that he was the Creative Services Manager, and reported to Tammy Fruits, and then to Rob Alberino ("Alberino"), a man in his 40's, who was hired to head the Media and Marketing Department in February 2010. Stephens testified that he was terminated on January 26, 2011 by Krug because his position was eliminated. He was 52 years old at the time. He confirmed he did not work for Hamilton or Young, Cox's immediate supervisors.

---

[3]An offer of proof is intended to insure that a trial court and opposing counsel know the precise evidence being offered and its argued relevance to the case. *State v. Townsend*, 737 S.W.2d 191, 192 (Mo. banc 1987). Typically, an offer of proof requires placement of the witness on the stand and inquiry of the witness outside the presence of the jury. *Id*. "When counsel uses the narrative offer of proof he runs a greater risk that the court will find the offer insufficient." *Id*. Here, the narrative of counsel never indicated how Crumb would have testified if called, and merely itemized questions counsel would have liked to ask Crumb. That is not an offer of proof. *Hawkinson Tread Tire Service Co. v. Walker*, 715 S.W.2d 335, 336-37 (Mo. App. E.D. 1986) (holding that counsel's mere statement of questions he would ask witness which required the court to guess at the content of the witness's responses was not an offer of proof sufficient to preserve a claim of error).

Evelyn Bray (one of the 17) testified in an offer of proof that she reported to Larry Clemmons (one of the 17) in the Finance Department. She understood that Clemmons reported to Crumb who reported to Donovan. She was terminated on January 26, 2011, and was 55 years old. She confirmed that she was not supervised by Cox, Young, or Hamilton.

Carol Modean (one of the 17) testified in an offer of proof that she was Donovan's executive assistant at the time of her termination on January 22, 2010. She found a list on Donovan's computer a few days before she was terminated identifying 5 people who would be terminated on January 22, 2010, including herself. She was terminated by Donovan and Krug who told her that the entire organization was being evaluated, and that Donovan no longer needed a traditional executive assistant. Modean said she later learned that someone else had been hired with the title "executive assistant." That person's duties and responsibilities as compared to Modean's former duties were not addressed in the offer of proof.

Following these additional offers of proof, counsel again engaged the trial court in an extensive discussion of its *in limine* ruling regarding the 17 former employees. At one point during the discussion, the trial court asked Cox's counsel whether the Chiefs would be permitted to call employees over the age of 40 who had been hired, or not terminated, if the court permitted the 17 former employees to testify on the excluded subjects. Cox's counsel advised that the Court's ruling admitting evidence about other employees would work both ways. The Chiefs had earlier indicated that they were prepared to call 38 witnesses if necessary to establish that the Chiefs had not systematically terminated older

employees.   The trial court took the arguments of counsel under advisement, and announced the next morning: "I am not changing my ruling."

The *in limine* ruling was revisited again during Cox's trial testimony.   After hearing extended argument from counsel, the trial court ruled:

> [T]he testimony presented by the proposed witnesses and the plaintiff's offers of proof does not establish nor demonstrate that the treatment they received by the Chiefs, nor the circumstances surrounding the termination of their employment with the Chiefs, was sufficiently similar to Mr. Cox's termination or the circumstances surrounding his termination.
>
> The court in *Williams*[4] identified five separate examples of similarity between the plaintiff and the other terminated employee.  In examining the record in the offers of proof, it was clear to me that such similarity didn't exist between the proffered witnesses and Mr. Cox's termination.  In my determination, any probative value of the testimony proposed by the plaintiff from these witnesses would be outweighed by the prejudicial effect it would have upon the jury.  In addition, I believe the testimony of these other past employees would only serve to confuse and distract the jury.  For these reasons and the reasons set forth in [defendant's] pleadings and arguments, the [defendant's][5] motion *in limine* to exclude these witnesses remains sustained.

After the close of ***all*** of the evidence, and just prior to the jury instruction conference, Cox made two additional offers of proof.   Anita Bailey (one of the 17) testified that she was given advance notice by Tammy Fruits in late 2009 that the Community Relations Department was going to be eliminated after the first of the year. She was the Director of Community Relations at the time.   She was terminated by Donovan and Krug on January 22, 2010.   She was in her late 50's at the time of her termination.   She later learned that someone else had been hired to fill a position titled

---

[4]The trial court was referring to *Williams v. Trans State Airlines, Inc.*, 281 S.W.3d 854 (Mo. App. E.D. 2009).

[5]In both bracketed locations, the trial court originally said "plaintiff."  The court was corrected by plaintiff's counsel and then made clear that it had intended to refer to the defendant.

12

"Customer Relations Manager."  That person's duties as compared to Bailey's former duties were not addressed in the offer of proof.  Bailey acknowledged on cross-examination that Bill Newman (one of the 17), the Vice President of Administration, was likely involved in the decision to terminate her.

Cox also submitted the deposition testimony of Larry Clemmons (one of the 17) as an offer of proof.  Counsel summarized the deposition testimony and claimed that Clemmons testified that Crumb and Krug met with him on May 19, 2011, and told him "you're the last" and that he would be retiring because the Chiefs wanted someone who would be able to work 10 to 15 years longer.  Counsel also represented that Clemmons testified that Donovan referred to him as an "old man."

The trial court denied the additional offers of proof, except for the statement Clemmons attributed to Donovan.  The trial court advised Cox's counsel that the statement attributed to Donovan did not fall within the categories of testimony excluded by his *in limine* ruling, and would not have been excluded had it been offered at trial. Cox sought leave to reopen the case to present this evidence. The trial court took the request under advisement over night.  The record does not reflect whether the trial court ever ruled the request.[6]  However, the case proceeded with instructions being read to the jury the next morning with no additional evidence presented.

In summary, Cox made offers of proof through the live or deposition testimony of 8 of the 17 former employees who were the subject of the motion *in limine*--Brenda Sniezek, Larry Clemmons, Anita Bailey, Ann Roach, Carol Modean, Tom Stephens,

---

[6]Cox has not claimed error on appeal in connection with his request to reopen the evidence.

13

Evelyn Bray, and Gene Barr.  Pioli testified during an offer of proof about 2 of the 17 former employees--Lamonte Winston and Lisa Siebern.  No offer of proof was made with respect to 7 of the 17 former employees--Nadine Steffan, Carl Peterson, Ken Blume, Pam Johnson, Bill Newman, Doug Hopkins,[7] and Pete Penland.

**(iii)** *The Trial Court did not Abuse its Discretion in Excluding the Testimony of 17 Former Employees Offered for the Purpose of Establishing a Claim of Discrimination that the Chiefs Engaged in a Pattern and Practice of Systematically Eliminating Older Front Office Employees*

Cox's first point relied on claims that the trial court abused its discretion in entering a blanket exclusion of evidence from 17 former employees "related to [the Chiefs'] systematic elimination of older front office employees."  As we noted, Cox claims the excluded evidence was "highly relevant" for two distinct reasons.  We address the first argued basis for relevance here--that the excluded evidence was highly relevant because "it would have demonstrated [the Chiefs'] discrimination against other front office employees on the basis of their age." Cox's attorney acknowledged during oral argument that Cox sought to admit the excluded evidence in part to establish that the Chiefs engaged in a pattern or practice of discrimination against older employees.

"In order to be admissible, evidence must be logically and legally relevant." *Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 250 (Mo. App. W.D. 2010).  "Logically relevant evidence establishes or negates a fact in issue or corroborates other relevant evidence." *Id*.  "To be legally relevant, the probative value of the evidence must outweigh 'the dangers of unfair prejudice, confusion of the issues,

---

[7]Doug Hopkins testified at trial, but Cox did not make an offer of proof with him about the excluded topics.

14

misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence." *Id.* (quoting *UMB Bank, NA v. City of Kansas City*, 238 S.W.3d 228, 232 (Mo. App. W.D. 2007)).

The trial court indicated on several occasions that one (though not the only) reason for its decision to exclude certain testimony from 17 former employees was Cox's failure to allege in his Charge of Discrimination or in his petition a pattern or practice of discriminatory behavior affecting him or older employees. Instead, Cox's Charge and petition alleged only a single, discrete act of age discrimination on October 14, 2010, the day he was terminated. "Pattern-or-practice cases differ significantly from the far more common cases involving one or more claims of individualized discrimination." *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001).

The legal rationale for the trial court's *in limine* ruling was consistent with the trial court's ruling nearly a year earlier when it denied Cox leave to amend his petition to add claims of discrimination based on a hostile work environment arising out of a pattern or practice of discrimination against other older employees. The trial court ruled that Cox was barred from adding this claim to his petition because he had not exhausted his administrative remedies by including the claim in his Charge of Discrimination.

Cox has not appealed the trial court's ruling denying him leave to amend his petition due to his failure to exhaust his administrative remedies. Nonetheless, the ruling appears to have been in accord with the law. *Alhalabi v. Missouri Dept. of Natural Resources*, 300 S.W.3d 518, 525 (Mo. App. E.D. 2009) (holding that the doctrine of exhaustion of remedies requires a claimant to give notice of all claims of discrimination

15

in an administrative charge as a condition to pursuing those claims in subsequent litigation).

It is axiomatic that evidence offered for the purpose of establishing a claim that is not before the court is not logically relevant. The trial court did not abuse its discretion in excluding the testimony of 17 former employees to the extent the evidence was offered to establish a claim of discrimination based on "systematic discrimination" against "other front office employees on the basis of their age" when that claim was not asserted in Cox's petition. *See Young v. Time Warner Cable Capital, L.P.*, 443 F.Supp.2d 1109, 1122-23 (W.D. Mo. 2006) (holding that where administrative charge deals solely with allegations of discrimination to plaintiff, and contains no allegation of a pattern or practice of discrimination against others, plaintiff has not exhausted remedies, and claim in petition alleging a pattern or practice of discriminating against others must be dismissed).

**(iv)** *The Trial Court did not Abuse its Discretion in Excluding the Testimony of 17 Former Employees Offered as Circumstantial "Me Too" Evidence to Establish that the Chiefs had a Discriminatory Motive or Intent in Terminating Cox*

Cox also wanted to introduce the excluded testimony of 17 former employees for the separate and distinct purpose of establishing that the Chiefs' stated reason for terminating him was pre-textual. Cox argues that offered for this purpose, the excluded testimony from and about 17 former employees was "highly relevant" circumstantial evidence that the Chiefs' possessed a discriminatory motive or intent in terminating him.

Generally, it is true that "'evidence of other acts of [a] defendant are admissible *if those acts are sufficiently connected* with the wrongful acts that they may tend to show

16

defendant's disposition, intention, or motive in the commission of the acts for which . . . damages are claimed.'" *Kline v. City of Kansas City*, 334 S.W.3d 632, 643 (Mo. App. 2011) (quoting *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 51 (Mo. App. W.D. 2004) (emphasis in original)). "In determining whether [such] evidence is admissible in a discrimination case, the trial court must ascertain whether the proffered evidence would allow 'a rational finder of fact to infer a discriminatory motive or . . . [to] conclude that the employer intended to discriminate in reaching the decision at issue.'" *Id.* (quoting *West v. Conopco Corp.*, 974 S.W.2d 554, 556 (Mo. App. W.D. 1998)).

Here, Cox hoped to have 17 former employees testify about the circumstances of each employee's departure from employment with the Chiefs for the purpose of circumstantially establishing that the Chiefs possessed a discriminatory motive or intent in terminating Cox. "There is no blanket exclusion in discrimination cases of [such "me too"] evidence . . . . Rather, the relevancy of such evidence must be reviewed on a case-by-case basis." *Hurst v. Kansas City, Missouri School Dist.*, No. WD76534, 2014 WL 1677822, at *11 (Mo. App. W.D. April 29, 2014). Though "me too" evidence cannot be summarily excluded, "me too" evidence from or about other employees is not logically relevant to tend to prove discriminatory intent or pretext unless it is established that the circumstances of the plaintiff and the other employees are "sufficiently similar," a relationship which the plaintiff bears the burden of establishing. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 874 (Mo. App. E.D. 2009)[8]; *Young v. Am. Airlines, Inc.*,

---

[8]*Williams* also discusses a "similarly situated" standard in a context where other employees "are involved in or accused of the same or similar conduct and are disciplined in different ways," a context particularly relevant to retaliatory employment impact claims. 281 S.W.3d at 873. Whatever the lexicon, the evidentiary principle is the

17

182 S.W.3d 647, 654 (Mo. App. E.D. 2005) (holding that federal cases "generally recognize that instances of disparate treatment can support a claim of pretext, but the ***plaintiff bears the burden of establishing that the employees are similarly situated in all relevant respects***") (emphasis added).[9] "'[A] trial court has considerable discretion'" in determining whether sufficiently similar circumstances have been demonstrated. *Kline,* 334 S.W.3d. at 642-43 (quoting *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 386 (Mo. App. E.D. 2010).

Cox first complains that the trial court erroneously made a "blanket ruling" summarily excluding testimony from all 17 former employees offered as circumstantial evidence of a discriminatory motive or intent in his termination. We disagree. The trial court's *in limine* ruling was expressly based, in part, on Cox's failure to establish that ***each*** of the 17 former employees was sufficiently similarly situated to Cox's circumstances to permit an inference of discriminatory motive. During trial, as discussed, *supra*, the trial court repeatedly revisited the *in limine* ruling in response to specific offers of proof, commenting each time that the offers of proof failed to establish sufficiently similar circumstances to Cox's circumstances. Thus, although the trial court summarily excluded evidence about the termination of other older employees to the

same. Logical relevance between the plaintiff's circumstances and the other employee's circumstances must be demonstrated.
[9]Cox argues that Missouri has not adopted the "similarly sufficient circumstances" standard, an argument that is belied by the holdings in *Williams, Young,* and *Kline*. Cox relies for his argument on *Holmes v. Kansas City Missouri Bd. of Police Com'rs ex rel. its Members*, 364 S.W.3d 615, 627, n.6 (Mo. App. W.D. 2012), where we held that a plaintiff is not required to establish that he or she was treated differently from "similarly situated" employees as an element of a prima facie case of employment discrimination. *Holmes* is inapposite as it addresses the essential elements of a prima facie of discrimination, and not the standard for assessing the admissibility of "me too" evidence offered for the purpose of establishing that an employer acted with a discriminatory motive or intent in making an employment decision.

extent the evidence was offered to establish an unpreserved claim of pattern-or-practice discrimination, the trial court did not enter a blanket ruling excluding the same evidence offered to circumstantially establish a discriminatory motive or intent in the decision to terminate Cox. Rather, the record plainly reveals that the trial court painstakingly revisited the *in limine* ruling following each offer of proof relating to one or more of the 17 former employees. On each occasion, the trial court held that the offers of proof failed to establish sufficiently similar circumstances to Cox.[10]

It is thus Cox's burden to establish that the trial court abused its discretion in excluding testimony from *each* of the 17 former employees offered to circumstantially establish that the Chiefs harbored a discriminatory motive or intent in terminating Cox. *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo. App. W. D. 1993). Stated differently, it is Cox's burden to establish that the departure of *each* of the 17 former employees from the Chiefs' employment was sufficiently similar to Cox's circumstances to render exclusion of evidence about each employee an abuse of discretion. Cox has not sustained this burden.

First, though Cox correctly observes that the admissibility of "me too" evidence must be assessed on a case-by-case basis, Cox's Brief curiously fails to address the circumstances of the 17 former employees on a case-by-case basis. Instead, Cox lumps discussion of all 17 former employees together, generally arguing that all were similarly situated because they were over 40, had worked for Carl Peterson, had (with the

---

[10]The trial court also frequently ruled during trial that the logical relevance, if any, of offer of proof testimony from or about former employees was outweighed by the prejudicial impact of the evidence, a subject we address, *infra*.

exception of 2) worked on the business side of the organization under Donovan, and were replaced by a younger employee.[11] These broad, generalized characteristics were certainly germane to the trial court's assessment of the logical relevance of the testimony from or about the 17 former employees. However, these broad, generalized characteristics do not establish that the trial court clearly abused its discretion by ruling that the 17 former employees were not sufficiently similarly situated to Cox's circumstances.

Second, Cox failed to preserve *any* claim of error in the exclusion of testimony from 7 of the 17 former employees for whom no offer of proof was made.[12] *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983) (holding that "[a]n offer of proof must demonstrate the relevancy of the testimony offered, must be specific and must be definite"); *Eckert v. Thole*, 857 S.W.2d 543, 546 (Mo. App. E.D. 1993) ("Without an offer of proof, made on the record at trial, [this Court] cannot convict the trial court of error in failing to admit evidence," and nothing is preserved for appellate review).

---

[11]As we discuss both *supra* and *infra*, evidence to support these generalized assertions was not tendered by Cox in offers of proof as to each of the 17 former employees. Though we refer to the assertions, we do not mean to suggest that the record supports the assertions.

[12]Cox failed to make offers of proof for Nadine Steffan, Carl Peterson, Ken Blume, Pam Johnson, Bill Newman, or Pete Penland. In addition, Cox failed to make an offer of proof with Doug Hopkins, even though he testified in Cox's case-in-chief. Cox excuses his failure to make offers of proof claiming it would have been an exercise in futility to do so. The record does not support this conclusion. Cox told the trial court he intended to make an offer of proof as to each of the 17 former employees, and the trial court was fully prepared to let him do so. More to the point, whether or not the trial court's ruling following the offers of proof might have been predictable, it was nonetheless Cox's burden to establish that the circumstances for *each* of the 17 former employees was sufficiently similar to Cox's circumstances to render discussion of that employee's age, circumstances of termination, and any pending litigation, logically relevant to permit an inference of discriminatory motive or intent in terminating Cox.

Third, the offers of proof relating to the remaining 10 former employees reveal factors the trial court could have relied on to conclude that each was not sufficiently similarly situated to Cox.[13] Two former employees (Lamonte Winston and Lisa Siebert) were employed on the football side of the Chiefs' operations, which Pioli controlled. Three former employees (Brenda Sniezek, Tom Stephens, and Evelyn Bray) were terminated on January 26, 2011, and 1 former employee (Larry Clemmons) was terminated on May 19, 2011, several months *after* Cox's termination in October 2010. Of

[13]The summary of the offers of proof or lack thereof as relates to the 17 former employees who are the subject of Cox's first point on appeal does not appear in Cox's Brief, but has been extracted by this Court from the transcript. In fact, point one on appeal fails to identify the precise evidence excluded at trial from each of the 17 former employees, and but for our exercise of discretion, preserves nothing for appellate review. *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 240 (Mo. App. S.D. 1990) (holding that point relied on that "does not identify any specific evidence that was excluded" preserves nothing for review). The argument portion of Cox's brief fails to remediate this error. Cox engages in a discussion of the danger of "blanket evidentiary exclusions," and in a discussion of how evidence involving the treatment of other employees is relevant in a discrimination case. Yet, Cox fails to apply the law to the specific evidence excluded from *each* former employee to explain how the trial court abused its discretion. And Cox fails to point this court to where in the record the excluded evidence was preserved for our review by an offer of proof. Again, but for the exercise of our discretion, Cox's first point on appeal preserves nothing for our review. *Hutchings ex rel. Hutchings v. Roling*, 193 S.W.3d 334, 348 (Mo. App. E.D. 2006) (holding claim of error regarding exclusion of evidence is unreviewable and is deemed abandoned where neither point relied on nor argument portion of the brief under the point identifies the excluded evidence).

Even if we afford Cox the benefit of incorporating his statement of facts into the argument portion of the Brief, the aforesaid deficiencies are not remediated. The statement of facts purports to summarize the excluded evidence from some of the 17 former employees, but cites in many instances to pre-trial pleadings, and not to testimony taken via offers of proof, making it difficult to ascertain whether the "excluded testimony" was preserved for our review. In addition, the statement of facts summarizes the purportedly excluded testimony of several witnesses *who were not among the 17 former employees*-specifically, Denny Thum, Scott Pioli, Steve Schneider, Dan Crumb, Kristin Krug, Mark Donovan and Heather Coleman. Cox loosely alleges that these witnesses were barred from testifying about the 17 former employees, but again fails to cite to offers of proof to confirm that excluded testimony about the 17 former employees from these witnesses has been preserved for our review. Our independent review of the transcript reveals that with the limited exception of Pioli's offer of proof testimony about Lamonte Winston and Lisa Siebert, none of these other witnesses testified during offers of proof on subjects related to the *in limine* ruling. Moreover, for two of these witnesses, Heather Coleman and Steve Schneider, the statement of facts summarizes excluded evidence that *has nothing to do with the 17 former employees* and that is not the subject of an issue on appeal, rendering its inclusion in the statement of facts argumentative.

It is Cox's burden to establish that the trial court abused its discretion by excluding evidence at trial. *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo. App. W. D. 1993). It is Cox's burden to establish that he preserved a claim of error relating to the exclusion of testimony from or about *EACH* of the 17 former employees with appropriate offers of proof. *Hawkinson Tread Tire Service Co. v. Walker,* 715 S.W.2d at 336. This court has exercised considerable discretion in electing to independently read 7 volumes of trial transcript to determine whether and what offers of proof were made at trial regarding the *in limine* ruling when that information should have been plainly set forth in Cox's Brief. "It is not the duty of the appellate court to seine the record in order to discover, if possible, error by the trial court; it is the duty of an appellant to distinctly point out the alleged errors and where they can be found in the record." *Eagleburger*, 794 S.W.2d at 240.

the remaining 4 employees, Gene Barr testified that he resigned; Anita Bailey and Carol Modean were terminated on January 22, 2010, more than 10 months *before* Cox; and Ann Roach was asked to retire in 2010 by Thum, who left the organization before Cox was terminated. All 10 of the former employees about or from whom offers of proof were made were told they were being terminated because their positions were being eliminated or because of a general reduction in force. None were accused of poor performance or insubordination. None admitted (as Cox did at trial) that he or she had engaged in conduct that would warrant termination.[14] None were supervised or terminated by Young or Hamilton, Cox's immediate supervisors. None held the same or similar position as Cox. None were employed in the Maintenance Department. Cox advised the jury in his opening statement and through the evidence in his case-in-chief that the only four Chiefs' employees who were "decision makers" in connection with his termination were Young, Hamilton, Krug, and Donovan. None of the offers of proof from or about the 17 former employees established that these decision makers collaborated with respect to any other termination. The trial court could have relied on these dissimilar factors to conclude that the former employees for whom offers of proof were made were not sufficiently similarly situated "in all relevant respects" to the circumstances of Cox's termination to warrant admission of their "me too" testimony.[15] *Young*, 182 S.W.3d at 654.

---

[14]In discriminatory termination cases, it is relevant in determining whether employees are "similarly situated" if the employees "are 'involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Williams*, 281 S.W.3d at 873 (quoting *Young v. Am. Airlines, Inc.*, 182 S.W.3d 647, 654 (Mo. App. E.D. 2005). *See also Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004).

[15]In fact, on one occasion, the trial court noted that it was influenced to conclude that the testimony from the former employees did not establish sufficiently similar circumstances because the former employees "worked in other departments or were fired for different reasons and at different times." On other occasions, the trial court

22

We are to presume that the trial court ruled correctly in excluding "me too" testimony from or about each of the 17 former employees. *St. Louis Cnty.*, 408 S.W.3d at 123. Cox has not met his burden to establish that the trial court's ruling is against the logic of the circumstances, is arbitrary and unreasonable, or indicates a lack of careful consideration. *Id.*

Cox cites several federal cases where the exclusion of evidence suggesting a discriminatory atmosphere, or that other employees were similarly terminated, was found to be an abuse of discretion.[16] These cases properly recognize that the mere "[f]act that an employer explains a termination in terms of business necessity does not . . . prevent a plaintiff from critically examining those proffered business reasons to test whether the employer is telling the truth." *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1101 n.1 (8th Cir. 1988) (superseded on other grounds by *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). However, these cases do not hold that ***all*** evidence a plaintiff summarily claims to be relevant to show discriminatory motive or intent must be admitted as a matter of law. We have recognized that though some federal decisions have upheld the exclusion of "me too" evidence, other federal cases have not. *Hurst v. Kansas City, Missouri School Dist.*, WD76534, 2014 WL 1677822, *11 (Mo. App. W.D. April 29, 2014) (citations omitted). Plainly, the admissibility of "me too" evidence must be

---

referenced that it was influenced in its ruling by the fact that different decision makers were involved in the decision to terminate Cox.

[16]*E.g., Phillip v. ANR Freight Systems, Inc.*, 945 F.2d 1054 (8th Cir. 1991); *Estes v. Dick Smith Ford*, *Inc.*, 856 F.2d 1097 (8th Cir. 1988); *MacDissi v. Valmont Industries, Inc.*, 856 F.2d 1054 (8th Cir. 1988).

23

reviewed on a case-by-case basis. *Hurst v. Kansas City, Missouri School Dist.*, WD76534, 2014 WL 1677822, *11 (Mo. App. W.D. April 29, 2014).

Cox's reliance on select federal precedent fails to take into consideration the "case-by-case" evaluation inherent in assessing the admissibility of "me too" evidence. Often, that assessment may be influenced by the form of the excluded evidence. For example, in *Estes*, the Eighth Circuit found an abuse of discretion in excluding *comparative statistical* evidence that Ford excluded blacks from its work force, that its service department offered free rides only to white customers, and that a member of Ford's management referred to blacks as "damn n****rs." *Id*. at 1103-04. Here, Cox did not offer comparative statistical evidence about the entirety of the Chiefs' work force, but instead wanted to call select former employees to testify about their particular circumstances, without reference to the balance of the work force.[17] Further, unlike the plaintiff in *Estes*, Cox **was** permitted to introduce evidence about remarks made by Chiefs' management employees suggesting a discriminatory atmosphere. Several witnesses testified about a Directors' meeting where playoff bonuses were discussed, and where Crumb was reported to have said that he was "sick of these old and entitled people."[18] Young and Stone were reported to have expressed agreement with the statement. Donovan was reported to have called the meeting the "best Director's meeting he had ever been in." Several witnesses also testified that Alberino frequently referred to

---

[17]Unlike trial testimony from a select number of present or former employees, statistical data would comparatively reflect the number of impacted employees against a total number of employees. "[C]omparative statistical data . . . [may have] some probative value for the question of whether discrimination has motivated a particular employee's treatment." *Estes*, 856 F.2d at 1103.

[18]This meeting occurred on January 5, 2011, shortly after Donovan was named President of the Chiefs' organization (replacing Thum), and thus almost three months *after* Cox was terminated.

24

sending "young guns" out for media related projects. At least three witnesses testified that Hunt reportedly told Carl Peterson that he wanted to take the Chiefs in "a more youthful direction."

In short, though the federal decisions cited by Cox recognize general principles of logical relevance that are consistent with Missouri law, the discriminatory circumstances pled and the specific evidence excluded in those cases renders the outcomes fact specific and of limited value in assessing whether the trial court abused its discretion in this case.

Moreover, even were we to conclude (which we do not) that the trial court abused its discretion in ruling that Cox's offers of proof about 10 of the 17 former employees did not establish logical relevance, Cox would still be required to establish that the trial court abused its discretion in alternatively ruling that the offers of proof were not legally relevant. "Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence." *Porter v. Toys 'R' Us-Deleware, Inc.*, 152 S.W.3d 310, 318 (Mo. App. W.D. 2004) (citations omitted). A trial court must weigh the probative value of evidence against any possible prejudice which might occur due to its admission because "[l]ogically relevant evidence is not necessarily admissible; the evidence must also be legally relevant." *Id.* "The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance. [It] is vested with broad discretion in ruling questions of relevancy of evidence and, absent a clear showing of abuse of that discretion, the appellate court should not interfere with the trial court's

25

ruling." *Pittman v. Ripley Cnty. Mem'l Hosp.*, 318 S.W.3d 289, 294 (Mo. App. S.D. 2010) (citations omitted).

Here, the trial court held that "any probative value of the testimony proposed by the plaintiff from these witnesses would be outweighed by the prejudicial effect it would have upon the jury . . . I believe the testimony of these other past employees would only serve to confuse and distract the jury."[19]  Cox does not contest this ruling on appeal. Cox's failure to address this alternative basis for the trial court's ruling is fatal to his point relied on. *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 590-91 (Mo. App. W.D. 2009) (holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court ruled against it); *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that the failure to challenge an alternative basis for the trial court's finding or ruling is fatal to appeal).

Point one is denied.[20]

### Point Two

In his second point on appeal, Cox argues that the trial court abused its discretion in excluding the testimony of Herman Suhr ("Suhr"), an employee of the Chiefs who allegedly overheard Pioli tell an unidentified person that "I need to make major changes

---

[19]The trial court was also concerned that the testimony of the 17 former employees about the circumstances of their terminations would open the door to the Chiefs' calling a number of witnesses (reportedly 38) over the age of 40 who were hired or retained during the same time frame.

[20]The argument portion of the brief addressing point one raises the additional claims that the excluded evidence was relevant on the issue of punitive damages, and that the trial court erred in admitting certain "me too" evidence offered by the Chiefs.  Neither issue is included within the scope of Cox's point relied on.  "We do not address errors that first appear in the argument portion of a brief and are not encompassed in the point relied on, because they are not preserved for review." *Hutchings*, 193 S.W.3d at 346.  Moreover, where a jury has failed to find liability or award actual damages, any error concerning the exclusion of evidence relevant to punitive damages could not have prejudiced Cox, since the jury never reached the punitive damage issue. *See Ziolkowski v. Heartland Regional Med. Ctr.*, 317 S.W.3d 212, 219-20 (Mo. App. W.D. 2010).

in this organization as so many employees of Carl Peterson are over 40 years old." In his point relied on, Cox argues this statement was "highly relevant" because (i) it would have served as additional evidence of the Chiefs' intent to carry out its systematic elimination of older front office employees, and (ii) it would have demonstrated the Chiefs' discriminatory motive or intent in his termination. Our standard of review for this point on appeal is the same as applied to point one.

The argument portion of Cox's Brief does not develop the claim raised in the point on appeal that Suhr's excluded statement was "highly relevant" to establish the Chiefs' "systematic elimination of older front office employees." "When matters referenced as alleged error in a point relied on are not developed in the argument portion of a brief, they are deemed abandoned." *Saunders-Thalden and Associates, Inc. v. Thomas Berkeley Consulting Engineer, Inc.*, 825 S.W.2d 385, 387 (Mo. App. W.D. 1992). *See also Papineau v. Baier*, 901 S.W.2d 190, 192 (Mo. App. W.D. 1995) ("Claims of error . . . without supporting argument preserve nothing for appellate review and are deemed abandoned."). In any case, we have already explained in our discussion of Cox's first point on appeal that evidence offered to prove that the Chiefs allegedly engaged in the discriminatory practice of systematically terminating older employees is beyond the discrete claim of discriminatory termination alleged in Cox's petition.[21]

The argument portion of Cox's Brief does address the second contention raised in the point relied on that Suhr's excluded statement was logically relevant direct evidence

---

[21]As we discussed in connection with point relied on one, *supra*, such assertions were not fairly raised by the allegations in Cox's Charge of Discrimination filed with the MCHR, and Cox thus failed to exhaust his administrative remedies as to that claim.

27

of discriminatory motive or intent in the decision to terminate Cox. Cox cites *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991) for the proposition that "[c]omments which demonstrate a discriminatory animus in the decisional process *or those uttered by individuals closely involved in employment decisions* may constitute direct evidence" of discriminatory motive or intent. (citations omitted) (emphasis added).

This general statement of legal principle is not in contest. "Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 n.4 (Mo. banc 2007). "Direct evidence includes evidence of conduct or statements *by persons involved in the decision-making process* that may be viewed as directly reflecting the alleged discriminatory attitude, if it sufficiently supports an inference that the discriminatory attitude was more likely than not a motivating factor." *Id*. (Emphasis added.)

Though not in contest, this controlling legal principle does not aid Cox. The trial court found that Suhr's testimony about Pioli's statement was not logically relevant direct evidence of discriminatory intent because Pioli was not involved in the decision to terminate Cox. For example, at the time of the offer of proof of Suhr's deposition, the trial court stated:

> Mr. Pioli was not a decision maker based upon all the evidence that I've heard in this case and the arguments and the pleadings that I've reviewed. Mr. Pioli was not a decision maker in the decision to terminate the plaintiff in this case and his responsibilities were apart and separate from the business side which the maintenance department fell under.

28

Cox does not contest the trial court's conclusion that Pioli was not a decision maker in his termination. In fact, the evidence was that Pioli was responsible for the football side of the organization, not the business side of the organization where Cox was employed. Though the evidence established routine interactions between Pioli and Cox relating to maintenance matters that impacted football operations, no evidence suggested that Pioli was involved in the decision to terminate Cox. Cox admitted as much. He advised the jury during opening statement, and his evidence at trial confirmed, that the only people involved in the decision to terminate him were Krug, Young, Hamilton, and Donovan. Thus, the trial court did not abuse its discretion in excluding Suhr's testimony offered as direct evidence of a discriminatory motive or intent in the decision to terminate Cox.

Moreover, the trial court alternatively ruled that Suhr's testimony was not legally relevant. Following the offer of proof of Suhr's deposition, the trial court ruled:

> Therefore, anything that [Pioli] may have said, and particularly the remarks that were attributed to him by Mr. Suhr in his deposition . . . would only serve to prejudice the defendant by somehow allowing, if the jury were to [be] allowed to attribute those remarks to a decision maker . . . .

Earlier in the case, as a part of extensive off-the-record discussion of Pioli's anticipated testimony and the related topic of Suhr's deposition, the trial court similarly held:

> Keep in mind I have read all of your briefs on this and there's argument on this going back to last Friday and some last night and today. I have also reviewed Mr. Pioli's deposition in its entirety. I reviewed Mr. Suhr's deposition as well. I think it's helpful to back up as to what my previous ruling was on the defendant's original motion on this subject *in limine*. It was my determination and I was convinced based upon my reading on the deposition and, quite frankly, I'm even more convinced after hearing some of the testimony today that Mr. Pioli was not a decision maker in the termination of the plaintiff. Therefore, it was my position then and it's my

29

position now that the disputed statement falls into the category of a stray remark and therefore is inadmissible, and also that its prejudicial effect, that being the statement, outweighs any probative value that the statement would have for the jury.

. . . .

For example, the prejudicial effect of the jury attributing that stray remark to a decision maker in this case as to the plaintiff's termination outweighs any probative value the statement brings to the case.

Cox has not addressed the trial court's ruling about the legal relevance of Suhr's excluded testimony. Cox's failure to challenge an alternative basis for the exclusion of Suhr's deposition is fatal to his second point on appeal. *City of Peculiar*, 274 S.W.3d at 590-91 (holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court ruled against it); *STRCUE, Inc.*, 386 S.W.3d at 219 (holding that the failure to challenge an alternative basis for the trial court's finding or ruling is fatal to appeal).

Point two is denied.[22]

---

[22]Cox's second point relied on only claims error in the exclusion of Suhr's testimony because of its relevance. The argument portion of Cox's brief raises two additional claims of error that are outside the scope of the point relied on: (i) that Pioli's statement was an admission of a party opponent (the Chiefs) and thus an exception to the hearsay rule; and (ii) that Suhr's testimony about Pioli's statement would have been proper impeachment of inconsistent testimony by Pioli. Neither argued basis for admission of Suhr's statement is preserved for our review. *Hutchings*, 193 S.W.3d at 346 (matters first raised in argument portion of brief and not included in point relied on are not preserved for appellate review).

*Ex gratia*, both unpreserved arguments are easily resolved on their merits. First, even if Pioli's purported comment qualified as an admission against interest and thus as an exception to the hearsay rule, its admissibility would remain subject to Cox's independent obligation to establish relevance. *Mash v. Missouri Pac. R.R. Co.*, 341 S.W.2d 822, 827 (Mo. 1960). We have already explained that the trial court did not abuse its discretion in ruling that Suhr's testimony was neither logically nor legally relevant. Second, Pioli never testified at trial about the statement Suhr purportedly overheard. Cox has not claimed error in the exclusion of Pioli's testimony. A trial court does not abuse its discretion in excluding a statement offered to impeach a prior inconsistent statement the jury has never heard. *State v. Mitchell*, 693 S.W.2d 155, 158 (Mo. App. E.D. 1985) (holding that cannot impeach with a prior inconsistent statement unless inconsistent testimony is shown).

*Point Three*

In his third point on appeal, Cox claims that the trial court abused its discretion in excluding any testimony from Hunt at trial or by way of a pretrial deposition. Cox claims that he was thus precluded from admitting relevant evidence about (i) a communication sent to Cox after his termination that contradicted the stated basis for his termination; (ii) Hunt's stated desire "to go in a more youthful direction;" and (iii) Hunt's direct involvement in terminating other older employees.

The exclusion of Hunt's testimony at a deposition and at trial was effected by court orders quashing subpoenas. "Trial courts have broad discretion in administering the rules of discovery, and appellate courts will not disturb the exercise thereof absent an abuse of discretion." *Bar Plan Mut. Ins. Co. v. Chesterfield Management Associates*, 407 S.W.3d 621, 633 (Mo. App. E.D. 2013) (citing *Sanders v. Ahmed*, 364 S.W.3d 195, 213 (Mo. banc 2012)). A trial court's decision to quash a trial subpoena effectively operates to exclude evidence at trial, and is thus reviewed for an abuse of discretion. *Boyer v. Sinclair & Rush, Inc.,* 67 S.W.3d 627, 634 (Mo. App. E.D. 2002) (holding that exclusion of evidence is within trial court's discretion and is reviewed for abuse of discretion).

Though both the quashed discovery and trial subpoenas are reviewed for an abuse of discretion, the potential for abuse is greater in discovery, as the universe of discoverable information exceeds that of admissible evidence at trial. *State ex rel. Humane Society of Missouri v. Beetem*, 317 S.W.3d 669, 672 (Mo. App. W.D. 2010) ("The discovery sought need not be admissible at trial, but must appear 'reasonably calculated to lead to the discovery of admissible evidence.'") (quoting Rule 56.01(b)).

31

Cox's point on appeal thus improvidently raises two distinct claims of error. Though this violates Rule 84.04, and preserves nothing for appellate review,[23] we exercise our discretion to address both the claim of error in quashing a discovery subpoena and a trial subpoena issued to Hunt.

1. ***The Trial Court did not Abuse its Discretion in Quashing Hunt's Deposition Subpoena***

The trial court quashed the deposition notice for Hunt finding that "annoyance, oppression, undue burden, and expense outweigh the need for such discovery." In making this ruling, the trial court held:

> Plaintiff also seeks the deposition of Clark Hunt, Chairman and Chief Executive Officer of the Kansas City Chiefs Football Club. Plaintiff claims the basis for taking Mr. Hunt's deposition is a letter that Mr. Hunt wrote to Plaintiff following Plaintiff's termination. Plaintiff argues that the letter directly contradicts not only the purported reasons for Plaintiff's termination, but also the sworn testimony of each witness who has provided testimony on Defendant's behalf. Plaintiff also contends that Mr. Hunt made comments regarding his own age relative to the age of Mr. Pioli's at the time of Mr. Pioli's hiring.
>
> Defendant argues in opposition that the letter from Mr. Hunt merely expresses gratitude to the Plaintiff and provides no basis for his deposition. Defendant argues that, as Chairman and CEO of the entire organization, Mr. Hunt was not involved in Plaintiff's work evaluation nor did he participate in the decision to terminate Plaintiff.

The trial court then outlined the law applicable to depositions of "top-level executives." The court noted that although litigants are permitted to depose top-level executives who have discoverable information, alternate methods of discovery may make a top-level

---

[23]*McLean v. First Horizon Home Loan, Corp*., 369 S.W.3d 794, 800 n.4 (Mo. App. W.D. 2012) ("A statement of a point relied on . . . violates Rule 84.04 when it groups together contentions not related to a single issue. As such it is multifarious. . . . Improper points relied on, including those that are multifarious, preserve nothing for appellate review.") (internal citations omitted).

deposition unnecessary if the purpose is outweighed by the annoyance, burden, and expense to take such a deposition.

The trial court's analysis is consistent with settled principles of law. In *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002), our Supreme Court recognized that "[e]ven if [a] top-level employee has discoverable information, the organization or its top-level employee may seek a protective order." The Supreme Court recognized that "[r]ank-and-file employees perform most tasks, while top-level employees are responsible for coordination and oversight." *Id*. at 606. Thus, persons in lower positions within an organization often have more or better information. *Id*. Discovery from a "top-level executive" can therefore be prohibited if the party opposing the discovery establishes "good cause." *Id*. at 607. "For top-level employee depositions, the court should consider: whether other methods of discovery have been pursued; the proponent's need for discovery by top-level deposition; and the burden, expense, annoyance, and oppression to the organization and the proposed deponent." *Id*. The trial court applied these principles to conclude that "good cause" had been established to quash Hunt's deposition subpoena.[24]

On appeal, Cox merely restates the general principle that litigants may depose top-level executives as announced in *Messina*, than urges a different conclusion than that reached by the trial court. Cox ignores, and does not discuss, *Messina's* holding that deposition discovery from top-level executives is subject to higher scrutiny requiring the

---

[24]In the same order, the trial court denied the Chief's request for a protective order quashing the deposition subpoenas of other "top-level executives," namely Pioli, Alberino, and Crump.

33

weighing of certain factors if a protective order is sought. Cox thus fails to explain how the trial court abused its discretion in quashing the deposition subpoena having considered and applied the analysis set forth in *Messina*. *Eagle ex rel. Estate of Eagle v. Redmond*, 80 S.W.3d 920, 924 (Mo. App. W.D. 2002) ("An argument is not properly before an appellate court if it merely makes bald assertions of general principles of law and never develops how such principles mandate reversal in the factual context of the particular case.") (citation omitted). Cox has not established an abuse of discretion in quashing the deposition subpoena for Hunt.

2. ***The Trial Court did not Abuse its Discretion in Quashing Hunt's Trial Subpoena***

The trial court granted the Chief's motion for a protective order quashing a trial subpoena for Hunt in July 2012, several months before trial commenced in February, 2013. Cox claims he was thus unable to present evidence regarding (i) a communication sent to Cox after his termination that contradicted the stated basis for his termination; (ii) Hunt's stated desire "to go in a more youthful direction;" and (iii) Hunt's direct involvement in terminating other older employees.

We begin with the third claim of prejudice--the inability to elicit testimony from Hunt about his purported involvement in terminating other older employees. The argument portion of Cox's Brief does not develop this claim of error. "When matters referenced as alleged error in a point relied on are not developed in the argument portion of a brief, they are deemed abandoned." *Saunders-Thalden and Associates, Inc.*, 825 S.W.2d at 387. In any case, we have already explained that evidence offered to prove

34

that the Chiefs allegedly engaged in the discriminatory practice of systematically terminating older employees is beyond the discrete claim of discriminatory termination alleged in Cox's petition.

Cox's first claim of prejudice is also easily resolved. The letter from Hunt to Cox was referred to on several occasions at trial, and was introduced into evidence by Cox on the fourth day of trial. Even if we could find the quashed trial subpoena to be an abuse of discretion, we would not find it be prejudicial. *See, e.g., Adkins v. Hontz*, 337 S.W.3d 711, 720 (Mo. App. W.D. 2011) ("Even if the exclusion of . . . evidence was an abuse of the trial court's discretion, we cannot find the exclusion was prejudicial" where the excluded evidence is cumulative of other evidence admitted at trial).

Cox's third claim of prejudice alleges that Cox was unable to elicit evidence regarding Hunt's purported statement that he wanted to take the Chiefs' organization in a "more youthful direction." That claim is not supported by the record. The statement attributed to Hunt came into evidence at trial on three occasions. It came in initially during the testimony of Ann Roach who testified that Peterson told her that Hunt made the statement. This testimony was elicited despite the fact the trial court had sustained the Chiefs' double hearsay objection, permitting Roach to testify about what Peterson told her, but not about anything Peterson claimed to have been told by others.[25] The statement attributed to Hunt then came in a second time when Cox asked Krug:

---

[25]Though Peterson was one of the 17 former employees about whom Cox complains, Cox offers no explanation for why he did not call Peterson to testify about the statement Hunt purportedly made to him.

35

There's been testimony in this courtroom that Clark Hunt wanted to go in a more youthful direction. Can we agree that that type of statement if executed, can we agree, would be a violation of law?

The Chiefs did not object to this question. Thus, the trial court permitted a third discussion of Hunt's comment during Cox's direct examination of Donovan, where Cox was permitted to inquire of Donovan as he had with Krug. Plainly, the claimed subject of Hunt's anticipated trial testimony came into evidence on three occasions. Hunt's testimony on the same subject would have been cumulative, rendering its exclusion not prejudicial. *Id*.

Cox summarily argues, without analysis or citation to authority, that even though all of the referenced subjects of Hunt's anticipated trial testimony came in through the testimony of other employees, the exclusion of Hunt as a witness "resulted in substantial unfair prejudice . . . [because it] materially affected the jury's ability to weigh the evidence in its entirety." [Appellant's Brief, pp. 56-7] Cox's argument ignores the holding in *Messina,* which recognizes that discovery from a "top-level executive" can be the subject of a protective order in part because lower level employees are often equally or better equipped to provide the same information. 71 S.W.3d at 606-07. We can articulate no reasoned basis why this holding would not apply equally to a trial subpoena, particularly when the scope of admissible evidence at trial is narrower than the scope of discoverable information. Stated differently, if the trial court did not abuse its discretion in quashing Hunt's deposition subpoena, we are hard pressed to see how it abused its discretion in quashing Hunt's trial subpoena, when the information attributed to him and about which Cox complains came into evidence through other witnesses.

36

Point three is denied.[26]

### *Point Four*

In his fourth point on appeal, Cox claims that the trial court committed plain error by failing to "restrain and purge" arguments made by the Chiefs during closing because the arguments impugned the character of Cox's counsel, accused counsel of greed and dishonesty, and misstated the law.

The plain error rule, Rule 84.13(c), provides that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."  "Rarely applied, the plain error rule is reserved for those situations in which hatred, passion or prejudice has been engendered causing manifest injustice or a miscarriage of justice."  *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo. App. S.D. 1980).

In Cox's statement of facts, he highlights 23 different statements made during the Chiefs' closing argument about which he complains on appeal.  We need not recite each of the statements as they are plainly thematic.  The statements all suggest that Cox told the truth about his termination, but that his lawyers did not want to face the truth.  In the course of pressing this theme, the Chiefs' counsel frequently used phrases like: "these lawyers don't want to face the truth;" and "don't let these lawyers fool you;" and "it's

[26]Cox cites to several other subjects in the argument portion of his Brief that he claims would have been the subject of Hunt's trial testimony.  These additional subjects exceed Cox's point on appeal and are not preserved for our review.  *Hutchings*, 193 S.W.3d at 346 (matters first raised in argument portion of brief and not included in point relied on are not preserved for appellate review).  In any event, in each case, Cox cites to transcript references where the same evidence was presented to the jury through different witnesses or exhibits, rendering Hunt's anticipated testimony cumulative, and its exclusion not prejudicial.  *Adkins*, 337 S.W.3d at 720.

about these lawyers, it isn't about Mr. Cox;" and "these lawyers don't want to listen to their own client."  The statements related to the fact that Cox openly admitted at trial that he was told he was terminated for poor performance; that he was given as an example the raise he authorized for an employee in contravention of Donovan's instructions; and that he knew when he gave Crowley a raise that he was violating Donovan's instructions and could be subject to termination.

By failing to object despite innumerable opportunities to do so, Cox "deprived the trial court of any opportunity to take remedial action," presuming, *arguendo*, that the arguments by the Chiefs' counsel were objectionable.  *Id*.  "Whatever error inhered in the jury argument of [the Chiefs] . . . could have been removed by timely and sufficient objection and request to the trial court for appropriate corrective measures."  *Stevens v. Watterau Foods, Inc*., 501 S.W.2d 494, 499 (Mo. App. 1973).  "The plain error rule . . . is not a refuge for the maladroit or neglectful."  *Id*.

"Our appellate courts have on rare occasions granted new trials under the plain error rule where the jury argument was calculated to arouse hatred and prejudice against a party or witness and thus tended towards a miscarriage of justice."  *Id*.  *See also*, *Calloway v. Fogel*, 213 S.W.2d 405, 409-410 (Mo. 1948) (finding plain error where, after disavowing any intent to invoke "the racial angle," argument was later made were a disparaging implication on that subject was unmistakable); *Leaman v. Campbell 66 Express Truck Lines, Inc*. 199 S.W.2d 359, 365 (Mo. 1947) (finding plain error where counsel for defendant implied with no basis in the record to do so that driver of car in which plaintiff's wife was driving was drunk, and that plaintiff filed suit in a county

where he was not known because of a poor reputation). Here, however, the subject matter and language employed by the Chiefs during closing argument "were not manifestly inflammatory." *Sandy Ford Ranch, Inc. v. Dill*, 449 S.W.2d 1, 7 (Mo. 1970). "[It] [cannot] confidently be said that . . . the remarks complained of as they appear in context, improperly influenced the jury to an unjust result or deprived [Cox] of a fair trial." *Id*. (denying plain error review of arguments during closing that a key witness was lying and was a "vulture watching for his prey").

Cox relies on *Critcher v. Rudy Fick, Inc.*, 315 S.W.2d 421 (Mo. 1958), where the Supreme Court granted a new trial because of statements made in defendant's closing argument disparaging opposing counsel. There, defense counsel referred to plaintiff's case as "framed-up," "cooked-up," and "half-baked." *Id*. at 424. Counsel accused one of his opposing counsel of "blushing," implying it was because he had been caught falsifying issues. *Id*. at 425. Counsel referred to opposing counsel as "smart and clever." *Id*. Counsel argued that opposing counsel had elicited the net worth of the corporate defendant solely to permit the individual plaintiff to "steal" money from a deep pocket. *Id*. Counsel told the jury that indeed he was "attacking [opposing counsel's] honor and integrity." *Id*. at 426. Finally, counsel closed by telling the jury that if it should return a verdict for the defendant to send a message to "these lawyers . . . that the day is not yet here when a 12-man, common law jury can be hoodwinked into giving a verdict for a worthless, no-good, half-baked, framed-up case." *Id*. Through the course of the closing, plaintiff's counsel repeatedly objected, and both counsel engaged in acrimonious

39

argument and personal attack on one another, all in the presence of the jury.  *Id*. at 424-26.

Though the assertions in this case and in *Critcher* fall into the loose category of comments on the motives of opposing counsel, they are of markedly different severity. More to the point, *Critcher* was not a plain error case.

> Plaintiff admits that as to some of the argument now claimed to be erroneous and prejudicial no proper and timely objection was made, but it is requested that we invoke 42 V.A.M.S. Supreme Court Rule 3.27 which provides that "Plain errors affecting substantial rights may be considered  . . . on appeal, in the discretion of the court though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." . . . However, even though there may be a duty on the trial court to take necessary corrective action without objection being made when argument goes to the extreme, as in this case, it is the general rule that the prejudicial effect of such improper argument will be considered to be waived if proper and timely objection is not made to the trial court so that it may, if the misconduct is of the nature to be subject to corrective action, take appropriate steps under the circumstances to remove the prejudicial effect.  ***It is not necessary on this appeal to determine if the argument would justify this court to invoke Supreme Court Rule 3.27 because plaintiff's counsel did make proper and timely objection to at least one phase of the argument that was improper and prejudicial.***

(Emphasis added.) (Internal citations omitted.)  Though relief was afforded in *Critcher*, it was largely because the claim of error ***had been preserved for review***.  In fact, the Supreme Court made a point to note:

> [I]t is appropriate in the situation here presented again to admonish counsel that Supreme Court Rule 3.27 is not to be a refuge for those who negligently fail to make proper objections or who fail to make objections because the trial situation may be considered "difficult to deal with by objections."

(Citations omitted.) *Critcher* is thus of no assistance to Cox. The Chiefs' comments about Cox's counsel in closing do not involve a situation in which hatred, passion or prejudice has been engendered causing manifest injustice or a miscarriage of justice warranting plain error review.

In addition to complaining that defense counsel improperly disparaged Cox's counsel during closing argument, Cox also seeks plain error review of a claimed blatant misstatement of law made during the Chiefs' closing argument. The Chiefs' argued that Cox's Charge of Discrimination failed to include reference to relevant, unfavorable facts. The Chiefs' counsel then argued that had Cox's counsel "told the truth to the MCHR," MCHR would have told Cox "you have no claim here." Cox claims on appeal that this was a "blatant misstatement of the law" subject to plain error review because it implied Cox's ability to file a lawsuit depended on whether the MCHR deemed his claim to be meritorious.

Though Cox seeks plain error review of this claim, it is not subject to plain error review. Cox's counsel timely objected during the Chiefs' closing and told the trial court that the aforesaid argument misstated the law by suggesting that the MCHR's findings controlled whether Cox could file a lawsuit. Cox's counsel then said: "I'm going to ask for an instruction to have the jury disregard it." After additional discussion with counsel, the trial court responded: "What I can tell the jury is that they should be guided by the instructions from this Court and the evidence that was presented in this case." Cox's counsel responded: "***Yes, sir. That will do***." (Emphasis added.)

41

Clearly, Cox objected, sought a curative instruction, received a curative instruction, and expressed his satisfaction with the curative instruction. He sought no other relief from the trial court for his sustained objection. "[A] request for a mistrial based on improper closing argument comes too late where it is not requested at the time the objection is made." *McMillin v. Union Elec. Co.*, 820 S.W.2d 352, 355 (Mo. App. W.D. 1991). Cox waived the remedy of mistrial when he failed to request it at the time of his sustained objection and when he affirmatively advised the trial court that the curative instruction it was prepared to give "would do." *Id*.

Point four is denied.

*Point Five*

In his fifth point on appeal, Cox claims that the trial court abused its discretion in failing to grant Cox a new trial based on the cumulative effect of the errors identified in points one through four on appeal. As we have determined no error occurred with respect to any of those points, point five is without merit and is denied.

**Conclusion**

The trial court's judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

42